HERITAGE HOUSING DEVELOPMENT, INC. f/k/a Heritage Geriatric Housing Development, Inc. and Heritage Geriatric Housing Development VIII, Inc. d/b/a Heritage Sam Houston Gardens, Appellants,

v.

Velma CARR, as an Heir at Law and the Representative of the Estate of Raymond Carr, Deceased, Appellee.

No. 01–04–00096–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 3, 2006.

Jonathan Allen, Patricia D. Chamblin, Michele Y. Smith, Mehaffy & Weber, P.C., Beaumont, TX, for Appellants.

Jacques Gaston Balette, David T. Marks, The Marks Law Firm, Timothy F. Lee, Ware, Jackson, Lee & Chambers, L.L.P., Henry P. Giessel, Giessel, Stone, Barker & Lyman, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

JANE BLAND, Justice.

Velma Carr brought this survival action for the negligent nursing home care and treatment of her husband, seeking dam-

ages against the nursing home, Heritage Geriatric Housing Development VIII, Inc. d/b/a Heritage Sam Houston Gardens ("Houston Gardens"), the nursing home's parent corporation, Heritage Housing Development, Inc. f/k/a Heritage Geriatric Housing Development, Inc. ("HHD"), and an administrator, a director of nursing, and three treatment nurses. A jury found the nursing home, the nursing home's parent corporation, and three of the nursing home's employees negligent in the care of Mr. Carr. The nursing home and its parent corporation appeal the judgment, claiming—among other things—that the evidence is legally insufficient to support a verdict based on vicarious liability against both corporate entities. We hold that the evidence is legally insufficient to support a verdict against the parent corporation and reverse the judgment against it. We further hold that the evidence is legally sufficient to support the claim for negligence against the nursing home. Because it is probable that including the parent corporation in the negligence charge affected the jury's apportionment of liability and damages as to the nursing home and the remaining defendants, we remand the case for a new trial on the negligence claim against the nursing home. We withdraw our earlier opinion dated May 25, 2006 and issue this opinion in its stead. Our disposition remains unchanged.

## I. BACKGROUND

### A. Mr. Carr's Condition

In February 1999, Raymond Carr was admitted to Houston Gardens, a nursing home representing that it specialized in caring for residents with Alzheimer's dis-ease. Mr. Carr's medical records indicate that at the time of his admission he had been suffering from Alzheimer's disease for about ten years, and that his cognitive skills had deteriorated in ways are typical of an Alzheimer's patient. He was unable to provide for his own personal hygiene and was unsteady in walking. Records also indicate he was well groomed, exhibited good hygiene, weighed 190 pounds, and had no signs of pressure sores or contractures. Subsequent to Mr. Carr's admission to Houston Gardens, his health seriously deteriorated. Mrs. Carr introduced evidence at trial—including medical records and testimony from the nursing home staff—that her husband endured substandard care from understaffed and undertrained employees at Houston Gardens. Among other evidence, Carr proffered exhibits and testimony that the Houston Gardens staff failed to re-position her husband, provide adequate incontinent care, administer range of motion exercises, maintain adequate nutrition, and provide adequate pain medication for a dislocated shoulder and pressure sores that he sustained while a resident of the nursing home. After residing at Houston Gardens for just over fifteen months, Mr. Carr was admitted to Golden Age nursing home, where he resided until his death two years later.

### B. The Entities Involved

Houston Gardens is a nursing home certified by the Texas Department of Human Services as an Alzheimer's facility, and is operated by Heritage Geriatric Housing Development VIII, Inc., a corporate entity that held the state license for the operation of the nursing home.[1] HHD is the

---

1. During a pretrial hearing, the attorney representing Houston Gardens stated that Carr's pleadings referred to "Houston Gardens" and "Heritage Geriatric Housing Development VIII" as the same entity. She agreed to withdraw her motion to dismiss the claims against Heritage Geriatric Housing Development VIII for failure to file a 4590i report for that entity if Carr agreed that the two names referred to the same entity. Carr stipulated that Houston

parent company of Houston Gardens. A third entity, Health Care Holdings, LLC, managed the facility, pursuant to a management contract with Houston Gardens, for most of the time Houston Gardens cared for Mr. Carr. Carr nonsuited Health Care Holdings at the close of her case-in-chief.

Houston Gardens thus is the state licensed health care provider and is the entity that entered into a management agreement for Health Care Holdings to manage the personnel and make hiring decisions at the nursing home. Though Houston Gardens did not produce the majority of payroll checks or time cards for the period Mr. Carr was a resident, one employee's file contains a manual payroll check listing Houston Gardens as the employer. During trial, the witnesses represented they were employed at Houston Gardens.[2] Certain employment applications, however, include HHD's name on them and include the hourly pay rate, the employee's position, and the shift the employee was to work. Houston Gardens used HHD's manuals on nursing home policies and procedures, and required employees to sign various acknowledgment forms that contained HHD's name at the top.

*C. The Jury's Findings*

The jury found for Carr, awarding a total of $2,204,000 in actual damages. Counsel for HHD moved for an instructed verdict, objecting to HHD's submission to the jury on the basis that no evidence existed to support recovery against it on a theory of vicarious liability. In particular,

HHD argued that employment applications listing HHD's name constituted legally insufficient evidence that it controlled the details of patient care at Houston Gardens. The jury found HHD liable for 45% of the damages, and Houston Gardens liable for 40%. The jury apportioned the remaining liability among the individual defendants, each of whom settled with Carr during the pendency of this appeal. The jury also awarded exemplary damages, having made affirmative findings of malice on the part of the defendants based upon clear and convincing evidence. The defendants moved for a judgment notwithstanding the verdict and a new trial. The trial court denied the motions and rendered a judgment based on the jury's verdict.

## II. HHD'S APPEAL

On appeal, HHD presents six arguments, including that the trial court erred in entering judgment against it because the evidence is legally and factually insufficient to prove that it is vicariously liable for the conduct of the nursing home employees. Carr responds that HHD is vicariously liable for the negligent treatment provided by the nursing home because it was the employer of the nursing home staff and possessed the right to control the staff. On appeal, Carr denies any claims against HHD based on piercing the corporate veil or on any theory of direct negligence (for example, insufficient budgeting). Thus, the limited issue before this court is whether the evidence is legally and factual-

Gardens referred to Heritage Geriatric Housing Development VIII. Therefore, we refer to Heritage Geriatric Housing Development VIII as Houston Gardens.

2. For example, director of nursing Janny Planting testified that she worked for "Sam Houston Heritage Gardens." Judith Crowell testified she was employed by Heritage Sam Houston Gardens, also as director of nursing. When asking about the chain of command, Carr's counsel noted that the questions "are going to deal specifically with your being the DON at Heritage Sam Houston Gardens." The unit manager, John Hodnett, testified that he was employed by Heritage Sam Houston Gardens.

ly sufficient to support the judgment of vicarious liability against HHD on the basis that it employed the nursing home staff who provided negligent health care.

### A. Legal Sufficiency—Standard of Review[3]

■■■ To demonstrate legal insufficiency on appeal, a litigant that did not bear the burden of proof at trial must show that there is no evidence to support the contested finding. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983); *Beard v. Beard,* 49 S.W.3d 40, 55 (Tex.App.-Waco 2001, pet. denied). A no-evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex.2003). A reviewing court must view the evidence in a light most favorable to the verdict, indulging every reasonable inference that supports it, but the court may not disregard evidence that allows only one inference. *City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex.2005). "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* at 827.

### B. Vicarious Liability of Employers

■■■ Under the doctrine of respondeat superior, an employer is vicariously liable for the tortious acts of its employees when they act within their scope of employment. *Baptist Mem'l Hosp. Sys. v. Sampson,* 969 S.W.2d 945, 947 (Tex.1998). Employers are held liable for the conduct of their employees because employers have the right to control the means and methods of the employee's work. *Id.;* RESTATEMENT (SECOND) OF AGENCY § 220 cmt. d (1958). In cases in which it is unclear who should be considered an "employer" for the purposes of vicarious liability, the controlling factor is the right to direct and control the details of the employee's work. *See St. Joseph Hosp. v. Wolff,* 94 S.W.3d 513, 537–38 (Tex.2002) (plurality opinion).

■■■ For example, under the borrowed employee doctrine, whether a general employee of one employer has become the borrowed employee of another employer hinges on whether the other special employer has the right to direct and control the employee with respect to the details of the particular work at issue. *Id.* The test is whether the borrowing employer has the right to control the progress, details, and methods of operation of the work. *Limestone Prods. Distrib., Inc. v. McNamara,* 71 S.W.3d 308, 312 (Tex. 2002); *Farrell v. Greater Houston Transp. Co.,* 908 S.W.2d 1, 3 (Tex.App.-Houston [1st Dist.] 1995, writ denied). The borrowing employer must control not merely the end sought to be accomplished, but also the means and details of its accomplishment. *Thompson v. Travelers Indem. Co.,* 789 S.W.2d 277, 278 (Tex.1990). Similarly, a party is not ordinarily vicariously liable for the actions of an independent contractor, because an independent contractor has sole control over the means and methods of the work he will accomplish. *See Enserch Corp. v. Parker,* 794 S.W.2d 2, 6 (Tex.1990). An agent is considered an employee only if the principal has both the right to assign the agent's tasks and the right to control the means and details by which the agent will accomplish those

---

**3.** When both legal and factual sufficiency issues are raised, we rule on the legal sufficiency challenge first. *Glover v. Tex. Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex.1981).

tasks. *Hanna v. Vastar Res.,* 84 S.W.3d 372, 376 (Tex.App.-Beaumont 2002, no pet). Thus, the right to control is the "supreme test" for determining who is the employer for the purposes of vicarious liability. *St. Joseph,* 94 S.W.3d at 542.

■■ We recognize that there is a joint-venture exception to this rule. *See Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 176 (Tex.1997). A joint venture exists if there is community of interest in the venture, an agreement to share profits, an agreement to share losses, and a mutual right of control. *Id.* In a joint venture, all the entities engaged in the venture may be jointly and severally liable for the conduct of their employees because they share control over the details of the employees' work. *See Battaglia v. Alexander,* 177 S.W.3d 893, 904 (Tex.2005) (finding two professional associations providing anesthesia services to hospital jointly and severally liable because they were engaged in joint venture). Here, none of the parties contended that a joint venture existed between HHD and Houston Gardens. Thus, to determine whether HHD is vicariously liable for the conduct of the nursing home staff in this case, we review the evidence to determine whether it supports a determination that HHD controlled the details of the nursing home staff's work.

*C. Legal Sufficiency of Evidence of HHD as Employer*

■■ Carr contends the employment paperwork the nursing home staff completed that has HHD's name on it, or refers to HHD as the employer, demonstrates HHD's employment of the nursing home staff and establishes HHD's vicarious liability. Carr points to employment at-will statements, job description acceptance forms, substance abuse policy notices, Equal Opportunity Employment statements, acknowledgment of time clock procedures, no solicitation policy notices, ethics and conduct policies, disciplinary and termination forms, and receipt of employee handbook acknowledgments as evidence supporting a finding that HHD employed the nursing home staff. Carr also observes that the nursing home used administrative manuals containing HHD's policies and procedures, thus further indicating that HHD controlled the details of the work performed.

HHD responds that Houston Gardens, not HHD, held the state license to operate the nursing home, and Houston Gardens is the entity that, together with Health Care Holdings, managed the facility. Houston Gardens stipulated at trial that it employed the nursing home staff.[4] In addition, the testimony at trial about the chain of authority at the nursing home reflects that Houston Gardens controlled patient care, not HHD. Houston Gardens contracted with Health Care Holdings to employ the nursing home administrator, who managed the nursing home and exercised the most control over operating the facility. The director of nursing, the unit manager, the charge nurse, and the nurses' aides reported to the administrator. The nurses' aides, who provided eighty to ninety percent of the hands-on care to the patients, were supervised up the chain-of-command, and ultimately answered to the administrator. Chandra Wiltz–White, administrator of Houston Gardens from October 1999 to April 2000, testified that she was ultimately responsible for ensuring that the nurses' aides were properly trained and competent to provide care to

---

**4.** On the fourth day of trial, while discussing the admissibility of some of Carr's evidence, the attorney representing both Houston Gardens and HHD stated: "Also, if you are talk-ing about who the employer was, I will stipulate that their employer was Heritage Housing Development VIII dba [sic] Sam Houston Gardens, Inc."

567

the patients, and that this was critical to ensuring that patients received proper care because the nurses' aides were the ones providing most of the hands-on care to patients. HHD did not employ White. Carr did not controvert this evidence with testimony or exhibits establishing that HHD controlled the details of patient care.[5]

The facts here parallel those in *St. Joseph Hospital v. Wolff*—although some evidence suggests one entity was involved in hiring employees and establishing general employment policies, none of the evidence is legally sufficient to establish vicarious liability, given the uncontroverted evidence that another entity controlled the provision of care to patients. In *St. Joseph,* St. Joseph Hospital was the sponsoring institution of a medical residency program with "final responsibility" for the residents and the quality of the education they received. 94 S.W.3d at 543. St. Joseph controlled the academic training and rotation schedule, and could limit the type of patient care a resident provided. *Id.* The Central Texas Medical Foundation (the "Foundation") was a participating institution that placed residents at one of its facilities where its teaching staff would oversee the residents. *Id.* The Foundation's Director of Surgical Education was responsible for the residents' training, and the Foundation reserved the right to suspend residents if they did not meet the Foundation's standards of performance. *Id.* At the time the resident in that case acted negligently, he was under the supervision of one of the Foundation's directors. *Id.* The Texas Supreme Court reversed a finding of negligence against St. Joseph based on vicarious liability for the resident's tortious acts, holding that the Foundation had the right to direct and control the details of the resident's work. *Id.* Thus, the evidence was legally insufficient to support a theory of vicarious liability against St. Joseph. *Id.*

As in *St. Joseph,* here the evidence is legally insufficient to support a finding that HHD—in contrast to Houston Gardens, the nursing home entity—controlled the details of the medical care provided to Mr. Carr. Although HHD was involved in hiring the nursing home employees and establishing policies—as evidenced by its corporate name on employment applications and manuals—the other evidence offered at trial establishes that Houston Gardens and Health Care Holdings, not HHD, controlled the details of employees' actions relating to the care Mr. Carr received. Absent statutory duty, joint venture, or other contractual agreement, only one entity is vicariously responsible under the common law and it is the entity that controls the details of the work the employees perform. *See id.* at 537–38; *Limestone,* 71 S.W.3d at 312; *Baptist Mem'l,* 969 S.W.2d at 947; *Thompson,* 789 S.W.2d at 278. Although Carr offered evidence that HHD was involved in establishing the general conditions of employment, Houston Gardens—not HHD—controlled the details of the care patients received at the nursing home. *See City of Keller,* 168 S.W.3d at 821 (stating that in *St. Joseph,* "evidence that a hospital controlled a doctor's rotation and patient assignments raises no material conflict with evidence that a different entity controlled the details of

**5.** No party to the case requested a factual determination from the jury as to the entity that controlled the details of care provided to Mr. Carr. *See Diamond Offshore Management v. Guidry,* 171 S.W.3d 840, 844 (Tex.2005) (holding that, where evidence did not conclusively show that employee was acting within the scope of his employment, an instruction or question submitting the issue to the jury is a prerequisite to the imposition of vicarious liability).

medical treatment, as only the latter is material in a malpractice case").

Our review of the evidence supports this conclusion. First, the documents that list HHD as the employer relate to general employment policies and procedures, but they do not indicate that HHD controlled the details of the staff's daily assignments; rather, both parties offered evidence that the staff of Houston Gardens did so. Although the fact that the nurses signed forms at the start of their employment promising to follow ethics or drug-free workplace policies, and that the employee manual came from HHD would ordinarily indicate that HHD was the entity enforcing the standards set forth in the manual, it does not do so here, where the witnesses testified that they worked for Houston Gardens, another entity that controlled the details of the work. *See St. Joseph*, 94 S.W.3d at 537–38; *Standard Oil Co. v. Anderson*, 212 U.S. 215, 222, 29 S.Ct. 252, 254, 53 L.Ed. 480 (1909) ("[W]e must carefully distinguish between authoritative direction and control, and mere suggestion as to details or the necessary cooperation[.]"). In *St. Joseph*, a number of documents demonstrated that residents were bound by the policies and procedures of St. Joseph Hospital, but establishing policies and procedures is not tantamount to controlling the actual work that is performed, if the evidence is that another entity did so. 94 S.W.3d at 543; *see also Watson v. Nortex Wholesale Nursery, Inc.*, 830 S.W.2d 747, 749–51 (Tex.App.-Tyler 1992, writ denied) (holding entity that controlled details of work was employer, despite fact that another entity was listed as employer on various workers' compensation documents).

Thus, even if Carr is correct that documents reflect the employees applied for employment with HHD, and that HHD could decide who would be fired, these facts are insufficient to impose vicarious liability if the evidence is uncontroverted that another entity—here, Houston Gardens—supervised the details of the work and stipulated that it was the employer. In *St. Joseph*, the hospital "agreed to pay [the resident] a stipend, to give him three weeks' vacation, and to provide him uniforms, a laundry service, a parking space, life and health insurance, a room when assigned to night duty, and professional liability insurance." 94 S.W.3d at 524. Those factors were not legally sufficient evidence to establish vicarious liability, however, because the amount of control an entity exercises over the terms and conditions of a worker's employment is different from the amount of control the entity exercises over the details of the actual work that person performs. *See, e.g., Cherqui v. Westheimer St. Festival Corp.*, 116 S.W.3d 337, 345 (Tex.App.-Houston [14th Dist.] 2003, no pet.) (holding that imposing liability on employer requires more than paying wages). To determine which entity has vicarious liability, we look to which entity controlled the details of the work performed, not which entity controlled the general conditions of the worker's employment. Here, all of the employees who supervised the care to Mr. Carr testified that they worked for Houston Gardens, the entity that held the state license to provide the health care.

Moreover, the testimony of Sydney Gerber does not provide legally sufficient evidence that HHD—in contrast to Houston Gardens—controlled the details of the health care provided at the nursing home. Gerber is a licensed nursing home administrator who testified as an expert to nursing home standards of care, state licensing requirements, and the relationship of the entities involved. Gerber acknowledged that Houston Gardens held the license to operate the nursing home. He also testified that Health Care Holdings, the man-

agement company, was very much involved in operating the nursing home. Finally, Gerber testified that the management contract with Health Care Holdings expired in August 1999, and that "Sam Houston Geriatric Housing, Inc." subsequently operated the facility. It is this latter testimony that Carr relies upon to support vicarious liability against HHD.

There are three problems with such reliance. First, "Sam Houston Geriatric Housing, Inc." is not the name of any defendant that could have controlled the nursing home staff. It is impossible to tell to which entity Gerber was referring, as both Heritage Sam Houston Gardens and Heritage Geriatric Housing Development, Inc. are named defendants. Second, the management contract Gerber refers to as "terminated" is Exhibit 509, a contract between Health Care Holdings and Heritage Danforth Gardens, a different nursing home from the one implicated in Mr. Carr's care. Finally, Chandra Wiltz–White, hired in October 1999 as the nursing home administrator, testified that she was fired from Houston Gardens by Health Care Holdings in April 2000, after Gerber claims the contract between Health Care Holdings and Houston Gardens terminated. This testimony thus does not provide any evidence that HHD—in contrast to Houston Gardens—controlled the employees providing health care to Mr. Carr while he resided at the nursing home.

In addition, Houston Gardens, not HHD, contracted with Health Care Holdings to assist in the management of the nursing home. The parties did not offer this agreement into evidence, but White's testimony indicated that Health Care Holdings oversaw employees through the nursing home administrator, and possessed the authority to stop admissions to the facility and set the budget for operations. All the nursing staff at Houston Gardens reported to the Houston Gardens administrator, who in turn testified that she reported to Health Care Holdings. When Houston Gardens obtained its Texas license, it disclosed that another entity, Health Care Holdings, would manage the nursing home. Any authority Health Care Holdings had with respect to the daily activities of the nursing home and the ultimate care Mr. Carr received derived from a contract with Houston Gardens, not with HHD. Thus, this evidence allows no inference that HHD controlled the details of the care Mr. Carr received.

### D. The 4590i Report

Although Carr filed a report under former article 4590i for Houston Gardens, she did not do so for HHD.[6] HHD moved to dismiss the claims against it on the basis that Carr never filed a report with regard to it, and raises Carr's failure to do so on appeal. In the trial court, Carr maintained that HHD was not a health care provider, and therefore no 4590i report was necessary. Carr's failure to file a 4590i for HHD based on her contention that HHD is not a health care provider undercuts her contention that HHD should be held vicariously liable for the negligent provision of health care. Carr correctly argues that she would not be required to file an expert report for HHD if HHD was not a health care provider. Carr cannot, however, both recover from HHD for provision of negligent health care, and simultaneously escape the re-

---

**6.** *See* Act of May 25, 1993, 73rd Leg., R.S., ch. 625, § 3, 1993 Tex. Gen. Laws 2347, 2347–49, *amended by* Act of May 4, 1995, 74th Leg., R.S., ch. 141, 1995 Tex. Gen. Laws 989, 989–90 [hereinafter "former article 4590i"], *re-*pealed by Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875 (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12) (Vernon 2005)).

quirement of filing a 4590i report against HHD as a health care provider. If we accept Carr's contention that HHD controlled the details of the provision of health care, a contention that must be true for Carr to recover under a vicarious liability theory in this case, then HHD would be considered a health care provider under cases interpreting 4590i, and Carr would have been required to file an expert report. *See Campbell v. MacGregor Med. Ass'n*, 966 S.W.2d 538, 542 (Tex. App.-Houston [1st Dist.] 1997), *aff'd in relevant part, rev'd in part*, 985 S.W.2d 38, 39 (Tex.1998) (holding professional associations providing health care as physicians were included under definition of health care provider, despite not being specifically included in plain language of statute, because legislature intended broad reading). At the time of this suit, the statute defined health care provider as any institution "duly licensed or chartered by the State of Texas to provide health care." *See* Act of May 30, 1977, 65th Leg., R.S., ch 817, 1977 Tex. Gen. Laws 2039, 2041, 2064, *repealed by* Act of June 30, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 864 (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12) (Vernon 2005)). Carr argues that because HHD was never licensed by the State, it cannot be considered a health care provider for the purposes of former article 4590i.

Carr cannot square HHD's exemption from the statutory definition of health care provider with her contention that legally sufficient evidence supports the jury's implied finding that HHD controlled the details of the health care services provided at Houston Gardens. We are not suggesting that an entity outside the definition of health care provider under 4590i could never be liable for the conduct of health care staff. *See St. Joseph*, 94 S.W.3d at 539–40 (holding fact that corporations are

legally prohibited from practicing medicine does not preclude them from being liable for practicing medicine negligently where evidence indicates they controlled details of provision of health care). Rather, here, HHD falls outside the definition of health care provider because it was not the state-licensed entity providing the health care to Mr. Carr—Houston Gardens was—and therefore it cannot be liable for providing negligent health care. Conversely, if HHD provided the health care to Mr. Carr, then under *MacGregor*, it is an entity controlling licensed health care professionals for which article 4590i requires a report. 966 S.W.2d at 541.

We hold, applying *St. Joseph Hospital*, that legally insufficient evidence exists that HHD exercised any right to control the details of the nursing home's care to Mr. Carr, given the uncontroverted evidence that another entity did so. Because common law vicarious liability is the sole basis for Carr's claim against HHD, we reverse the judgment against HHD. We thus do not address HHD's remaining issues on appeal.

### E. Effect of Reversal

 If the jury's apportionment of liability could have been affected by an issue on which the trial court charged the jury but on which there was legally insufficient evidence, a new trial on the entire negligence claim is required. *Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 230–31 (Tex. 2005). In *Romero*, the trial court instructed the jury that if it found the codefendants liable under either of two theories of liability, then it should apportion liability for the injury. *Id.* at 219. The court of appeals held the evidence legally insufficient to support one of the theories of liability, and remanded for a new trial on the entire negligence claim "[b]ecause the jury would probably have apportioned lia-

bility differently had it been restricted to considering only" one theory of liability. *Id.* at 220. The Texas Supreme Court affirmed, holding that unless the appellate court is "reasonably certain that the jury was not significantly influenced" by the legally unsupported issue, the error is reversible. *Id.* at 227–28 (quoting *Braun v. Flynt,* 731 F.2d 1205, 1206 (5th Cir.1984)). The court also observed that it must remand for a new trial on the negligence issue because the jury's finding on the unsupported theory of liability may also have affected the jury's damages findings. *Id.* at 230–31.

■ Similarly, a new trial is necessary in this case, because the jury reasonably could have apportioned liability differently as between Houston Gardens and the remaining defendants if HHD had not been included in the negligence charge. The jury apportioned 45% of the liability to HHD and 40% to Houston Gardens. The finding of vicarious liability against HHD was not supported by legally sufficient evidence, and we are not reasonably certain that HHD's inclusion in the jury charge did not affect the jury's apportionment of liability or the finding of damages against Houston Gardens, particularly given HHD's contention on appeal that the reason it is not the nursing home employer is because Houston Gardens fits that role. As we discuss next, we conclude that legally sufficient evidence supports Carr's claim for negligence against Houston Gardens. Accordingly, we remand the case for a new trial on the negligence claim against Houston Gardens.[7]

## III. HOUSTON GARDENS'S APPEAL

In its appeal, Houston Gardens contends (1) the trial court erred in entering judgment against it if this court finds HHD was the employer for the purposes of vicarious liability, because then Houston Gardens cannot be liable, and the evidence thus was legally and factually insufficient to support a finding against Houston Gardens; (2) the trial court erred in entering judgment on the jury's verdict awarding exemplary damages; and (3) the trial court erred in failing to properly apply a statutory cap with respect to the jury's award of actual damages.

In connection with its vicarious liability argument, Houston Gardens claims that under *St. Joseph,* only one of the two entities, HHD or Houston Gardens, can be vicariously liable for the negligence of the nursing home staff. It does not contend that insufficient evidence exists that it was the employer for the purposes of vicarious liability—as it conceded as much at trial—but instead argues that if HHD is found to be the employer, then no basis exists for the judgment against Houston Gardens on a theory of vicarious liability. Importantly, Houston Gardens does not contest on appeal that the evidence supports the jury's finding that Mr. Carr received negligent health care. In fact, several members of the nursing staff employed at Houston Gardens during the time Mr. Carr resided there testified that he received negligent care.[8] Moreover, Houston Gardens did not contest at trial that it was the entity whose employees provided the care to Mr. Carr.[9] Because we hold the

---

**7.** The remaining defendants have settled while the case was on appeal.

**8.** As counsel for HHD and Houston Gardens conceded in her opening statement to the trial court, "I am going to concede to you up front that this facility had managerial problems, that there were some staffing issues, and cer-

tainly the documentation that we have to defend this case is far from perfect, and it's incomplete."

**9.** For example, during opening statements, counsel for Houston Gardens and HHD told the jurors: "[j]ust for purposes of clarity, this

evidence is legally insufficient to find that HHD was the vicariously liable employer, Houston Gardens's first issue is moot.

██ Houston Gardens further claims the evidence is legally insufficient to support a finding of liability against it based on a theory of negligent hiring. We disagree. Legally sufficient evidence exists to find Houston Gardens vicariously liable for the conduct of the nursing home staff and its hiring. Sydney Gerber testified that Houston Gardens was the entity licensed to operate the nursing home, meaning it had a duty to uphold and comply with state standards. Houston Gardens relies on the fact that it entered into a contract for Health Care Holdings to assist in managing the facility, yet Houston Gardens did not introduce this contract at trial, so the jury could infer from the evidence presented that Houston Gardens bore responsibility for hiring decisions made at the nursing home. Houston Gardens's administrator oversaw the day-to-day operations of the nursing home, and was ultimately responsible for the care provided by the staff. The director of nursing was responsible for ensuring compliance with state and federal regulations, delegation of duties, ensuring proper charting, and implementing patient care plans. The nurses' aides, who provided at least eighty percent of the hands-on care to patients, were controlled by the charge nurses, who were controlled by the unit managers, who were controlled by the director of nursing. With the exception of White, all of the nursing home witnesses testified that they worked for Houston Gardens. White testified that Health Care Holdings hired her, but conceded it did so pursuant to a contract with Houston Gardens, a contract that was neither offered into evidence nor otherwise described as to

its contents. The evidence supports the implied finding by the jury that Houston Gardens controlled the hiring and the details of the health care provided by the nursing home staff. We therefore hold that legally sufficient evidence supports the jury's finding of liability against Houston Gardens. Because we reverse and remand the case for a new trial to determine the apportionment of liability under *Romero*, we do not reach Houston Gardens's remaining issues on appeal that relate to factual sufficiency, actual damages, and exemplary damages.

## IV. CONCLUSION

Applying *St. Joseph Hospital*, we hold the evidence is legally insufficient to support the jury's verdict against HHD based on a theory of vicarious liability, but hold the evidence is legally sufficient to support the jury's verdict as to Houston Gardens under that theory. 94 S.W.3d at 543. We therefore reverse the judgment against HHD and render judgment in its favor. The jury apportioned liability among HHD and Houston Gardens, and awarded damages against each defendant. We cannot be reasonably certain that the inclusion of HHD in the charge did not affect the jury's findings as to damages and the apportionment of liability with respect to Houston Gardens. We therefore remand the case for a new trial as to Houston Gardens. *See Romero*, 166 S.W.3d at 230–31.

entity, Heritage Geriatric Housing VIII, dba Sam Houston Gardens, is the nursing home.

That is the entity that provided care to Mr. Carr."