Opinion issued December
22, 2011.



In The

Court of Appeals

For The

First District of Texas

————————————

NO. 01-11-00047-CV

———————————

Foodtown,
Gerland’s Food Fair, Inc., Gerland’s Corporation, and Gerland’s Realty, Inc., Appellants

V.

Eva
Tanguma, individually and as 

next
friend of Albert Tanguma, Appellee



 



 

On Appeal from County
Civil Court at Law No. 2

Harris County, Texas



Trial Court Case No. 905,713

 



 

 

MEMORANDUM OPINION

 

Eva
Tanguma sued Foodtown individually and on behalf of her son, Albert Tanguma,
alleging Foodtown’s negligence proximately caused a hand injury to Albert when
his hand was caught in a conveyor belt during a trip to the grocery store.  A jury found that Foodtown and Albert were
both negligent, attributing sixty percent fault in the incident to Foodtown and
forty percent to Albert.  The jury
awarded Mrs. Tanguma damages for Albert’s medical expenses, and it awarded
Albert damages for past and future physical impairment.  Foodtown appeals, contending that the
evidence is legally insufficient to support the jury’s verdict because the
Tangumas did not secure jury findings against Foodtown for a premises defect,
and the jury heard no evidence that Foodtown had engaged in any negligent
activity.  The jury heard evidence about a
defect in the condition of the conveyor belt, but the record reveals no
evidence of any negligent act by a Foodtown employee.  Because the jury’s findings address only the
latter theory, we reverse and render.

Background

          In
October 2005, Eva Tanguma and her son Albert, then thirteen, went to Foodtown
to buy groceries.  Foodtown was
especially busy that day, so Albert decided to leave his mother’s chosen
check-out lane and to wait for her by the adjoining check-out lane, which was closed.   Albert
waited for his mother near the vacant register’s bagging area and drank a soda.  

When Albert placed his soda on the vacant register
counter, the conveyor belt suddenly turned on. 
It caught Albert’s right hand and crushed his hand between the belt and
the metal plate covering the pulley mechanism. 
Albert yelled and his mother ran to the register.   While
Mrs. Tanguma searched for the stop button, an employee intervened and stopped
the belt.  

Albert’s hand was swollen and bruised
after the incident.  Mrs. Tanguma took
her son to a doctor the following day.  X-rays
revealed no bone damage.  The doctor prescribed
physical therapy to treat the stiffness in Albert’s hand.  When Albert’s condition did not improve,
Albert’s mother insisted that her son receive an MRI.   The MRI
revealed no damage to Albert’s hand.  Mrs.
Tanguma stated that, although physical therapy has helped her son, Albert’s
hand still bothers him because “when the weather changes, he can tell.  It hurts him if it’s cold or humid or if it’s
going to rain.”  The jury saw Albert’s
medical records and proof of the medical expenses incurred in the treatment of
his hand. 

At trial, the parties disputed the events
that led to Albert’s injury.  Foodtown’s
witnesses explained that its cashiers operated the conveyor belt by pressing a
recessed button at the base of the register. 
According to Foodtown, Albert was leaning over the register and
accidentally hit the button.  Albert, in
turn, denied playing with the belt and testified that he did not know how the
belt turned on.  Mrs. Tanguma likewise
testified that Albert played no part in turning on the conveyor belt.  

After the close of evidence, the
trial court gave the jury a simple negligence instruction: “Did the negligence,
if any, of the persons named below, proximately cause the occurrence in
question?”  The jury found that both
Foodtown and Albert were negligent.  It
attributed sixty percent of fault for the accident to Foodtown and forty
percent fault to Albert.  The jury
awarded damages for Albert’s past medical expenses and for his past and future
physical impairment.  Foodtown moved for
judgment notwithstanding the verdict and for new trial, contending that the
evidence was legally insufficient to support the jury’s verdict.  The trial court denied the motions and
rendered judgment on the verdict.

Evidentiary Sufficiency

          Foodtown
contends that the trial court erred in entering judgment on a negligent-activity
theory because there was no evidence or factually insufficient evidence to
submit this claim to the jury.

          A.      Standard of review

To demonstrate legal insufficiency on
appeal, a litigant that did not bear the burden of proof at trial must show
that there is no evidence to support the contested finding.  Croucher
v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983); Heritage Hous. Dev., Inc. v. Carr, 199 S.W.3d 560, 565 (Tex. App.—Houston [1st Dist.] 2006, no pet.).  A no-evidence point will be sustained when
(a) there is a complete absence of evidence of a vital fact, (b) the court is
barred by rules of law or evidence from giving weight to the only evidence
offered to prove a vital fact, (c) the evidence offered to prove a vital fact
is no more than a mere scintilla, or (d) the evidence conclusively establishes
the opposite of the vital fact.  King Ranch, Inc. v. Chapman, 118 S.W.3d
742, 751 (Tex. 2003).  A reviewing court
must view the evidence in a light most favorable to the verdict, indulging
every reasonable inference that supports it, but the court may not disregard
evidence that allows only one inference.  City of
Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005).  “The final test for legal sufficiency must
always be whether the evidence at trial would enable reasonable and fair-minded
people to reach the verdict under review.”  Id. at
827. 

In reviewing a factual sufficiency
challenge, we consider and weigh all of the evidence supporting and
contradicting the challenged finding and set aside the finding only if the
evidence is so weak as to make the finding clearly wrong and manifestly unjust. 
Cain v. Bain, 709 S.W.2d 175,
176 (Tex. 1986); see Plas-Tex, Inc. v.
U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989).

B.      Premises
liability or negligent activity?

A premises owner “may be liable for
two types of negligence in failing to keep the premises safe: that arising from
an activity on the premises, and that arising from a premises defect.”  Clayton
W. Williams, Jr., Inc. v. Olivo, 952 S.W.2d 523, 527 (Tex. 1997) (citing Redinger v. Living, Inc., 689 S.W.2d 415,
417 (Tex. 1985)); see Coastal Marine
Serv. of Tex. v. Lawrence, 988 S.W.2d 223, 225 (Tex. 1999).  “[N]egligent activity encompasses a
malfeasance theory based on affirmative, contemporaneous conduct by the owner
that caused the injury, while premises liability encompasses a nonfeasance
theory based on the owner’s failure to take measures to make the property
safe.”  Del Lago Partners, Inc. v. Smith, 307 S.W.3d 762, 776 (Tex. 2010); see In re Tex. Dep’t of Transp., 218 S.W.3d 74, 77 (Tex. 2007); State v. Shumake, 199 S.W.3d 279, 284
(Tex. 2006); Timberwalk Apartments,
Partners, Inc. v. Cain, 972 S.W.2d 749, 753 (Tex. 1998); Keetch v. Kroger Co., 845 S.W.2d 262,
264 (Tex. 1992); see also Kroger Co. v.
Persley, 261 S.W.3d 316, 319 (Tex. App.—Houston [1st Dist.] 2008, no pet.)
(cautioning that trial court should not submit negligent activity claim to jury
unless evidence shows that injury was caused by or was contemporaneous result of
negligent activity itself rather than condition created by negligent activity,
and that if injury was caused by condition created by activity rather than
activity itself, plaintiff is limited to premises defect theory of liability).  The Supreme Court of Texas consistently
has rejected attempts to blur the distinctions between these two types of
claims.  Shumake, 199 S.W.3d at 284.  

          The Tangumas elected to pursue
recovery under a negligent activity theory, and, in keeping with that theory,
the trial court instructed the jury on simple negligence.  Foodtown contends that the judgment must be
reversed because there is no evidence to support a finding that Foodtown
engaged in any negligent conduct that caused Albert’s injury.  Foodtown maintains that the Tangumas’ claims
rest solely on a premises defect theory.  The Tangumas respond that evidence that the
conveyor belt turned on is enough to support a negligent activity theory.

Dallas Market
Center Development Co. v. Liedeker, 958 S.W.2d 382 (Tex. 1997), is
instructive on this issue.  In a hotel
owned by Dallas Market Center (DMC), the timing device on a freight elevator
automatically lowered the entry gate twenty-one seconds after it opened.  Id.
at 383.  When the elevator was originally
installed, it had sounded a warning bell when the gate was about to lower.  Id.  But, after the noise annoyed hotel guests,
the bell was muffled.  Id. 
Liedeker, a florist, was loading plants onto the elevator as the gate
began to lower.  Id.  The gate struck her head
and injured her neck.  Id.

          The trial court in Liedeker submitted the case to the jury
under a negligent activity theory.  Id. 
The Supreme Court reversed on an unrelated charge error, but, noting the
possibility that the case would be retried, also addressed DMC’s
contention that the case should have been submitted under a premises defect theory
rather than a negligent activity theory.  Id.
at 385.  The Court agreed with DMC,
observing that “Liedeker claims that her injury was caused by the condition of
DMC’s elevator, not by any conduct of DMC at the time of her injury.”  Id.  

          Like the moving conveyor belt here,
the moving gate in Liedeker was the
immediate cause of the plaintiff’s injury. 
In each case, though, the motion was not caused by the premises owner’s
affirmative, contemporaneous act, but by an allegedly defective condition on
the premises.  In Liedeker, the muting of the warning bell was the condition that
caused the injury.  Here, the plaintiffs
pointed to the accessibility of the conveyor belt’s on/off switch.   

We agree
with Foodtown that no evidence supports a finding that its negligent activity
caused Albert’s injury.  The simple
negligence question set forth in the charge could have supported the judgment
under that theory, but it “cannot support a recovery in a premises defect case.”
Clayton W. Williams, Jr., Inc. v. Olivo, 952 S.W.2d 523, 529 (Tex. 1997).  To prevail under a premises defect theory, the
plaintiff must prove (1) that the owner had actual or constructive knowledge of
some condition on the premises, (2) the condition posed an unreasonable risk of
harm, (3) the owner did not exercise reasonable care to reduce or eliminate the
risk, and (4) the owner’s failure to use such care proximately caused the
plaintiff’s injuries.  Keetch, 845 S.W.2d at 264 (citing Corbin v. Safeway Stores, Inc., 648
S.W.2d 292, 296 (Tex. 1983)).  The
Tangumas, as plaintiffs, bore the burden to present evidence and secure
findings on these elements.  See Olivo, 952 S.W.2d at 529–30
(reversing and rendering because plaintiff failed to secure findings on essential
elements of premises liability claim and elements were not “necessarily
referable” under Rule 279 to elements submitted).  Because they did not, we hold that the trial
court erred in entering judgment in their favor.

Conclusion

          We hold that the evidence is legally
insufficient to support the judgment on the Tanguma’s negligence claim.  We therefore
reverse and render judgment that they take nothing. 

 

                                                                   Jane
Bland

                                                                   Justice


 

Panel
consists of Chief Justice Radack and Justices Bland and Huddle.