**Opinion issued March 3, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-15-00680-CV

———————————

**ESP RESOURCES, INC. F/K/A PANTERA PETROLEUM, INC., Appellant**

**V.**

**BWC MANAGEMENT, INC., Appellee**

---

**On Appeal from the 113th District Court**
**Harris County, Texas**
**Trial Court Case No. 2013-25068**

---

## MEMORANDUM OPINION

BWC Management, Inc. sued ESP Resources, Inc. for amounts owed under three promissory notes. A jury rendered a verdict in favor of BWC Management, and the trial court entered judgment on the verdict. On appeal, ESP Resources contends that (1) the trial court erred in admitting hearsay evidence and in excluding

other relevant evidence, and (2) the evidence is legally and factually insufficient to support the jury's verdict. Finding no reversible error, we affirm.

## BACKGROUND

BWC Management alleged that ESP Resources was liable under three promissory notes, executed by Chris Metcalfe, CEO of ESP Resource's corporate predecessor, Pantera Petroleum.[1] The parties' principal dispute at trial concerned whether BWC Management had funded the loan amounts stated in the promissory notes.

Jenny Crichton, the sole shareholder and president of BWC Management, and David Dugas, the current chief executive officer and president of ESP Resources testified as witnesses. The trial court admitted as evidence: (1) the three promissory notes; (2) Swiss bank confirmation forms showing the transfer of funds from BWC Management; (3) ESP Resources' filings with the United States Securities and Exchange Commission indicating notes payable; (4) audit correspondence relating to ESP Resources; and (5) the audit-related records of one of its accounting firms.

Crichton testified that she and ESP Resources' former president, Chris Metcalfe, negotiated the terms stated in the three promissory notes. During her

---

[1] The parties do not dispute the corporate history, suggest that any distinction between Pantera Petroleum and ESP Resources affects the outcome, or contend that ESP Resources is not liable as the successor in interest to Pantera Petroleum.

testimony, she discussed each of the three notes, which the trial court had admitted by stipulation of the parties. She confirmed that the notes bore Metcalfe's signature, and were executed in September 2007, July 2008, and August 2008. Crichton testified that she in turn borrowed the funds from another entity, FTS Financial Investments, to lend to ESP Resources. She also testified that she confirmed with Metcalfe and FTS Financial Investments that the sums stated in the notes were provided to ESP Resources, that ESP Resources had not paid BWC Management when the payments became due, and that BWC Management in turn had not repaid FTS Financial Investments as a result.

When asked for documentation corroborating that the funds at issue had been provided to ESP Resources, Crichton referred to two Swiss bank forms, represented to be confirmations of the transfer from FTS Financial Investments to ESP Resources of the sums associated with the second and third notes. ESP Resources objected to the forms as hearsay and asserted that BWC Management had not laid an adequate foundation for their admission. The trial court admitted the bank forms into evidence.

Crichton also testified that ESP Resources was a publicly traded company and that the annual report it filed with the Securities and Exchange Commission for the 2012 fiscal year confirmed that ESP Resources had received the funds stated in all three notes by including them as long-term debt owed by the company. Like the

promissory notes, the annual report previously had been admitted into evidence by stipulation. She further testified that ESP Resources had written BWC Management in connection with an audit conducted by an accounting firm, in which it confirmed that the two companies' records were in agreement as to the amount owed on the notes. This February 2012 letter stated virtually the same amount due under the three notes and bore Dugas's signature. The trial court admitted the audit letter into evidence without objection.

On cross-examination, ESP Resources contended that it had sold an equity interest to FTS Financial Investments and that BWC Management did not play an intermediary role in these transactions. Defense counsel questioned Crichton about a February 2008 report that ESP Resources filed with the Securities and Exchange Commission disclosing an agreement for ESP Resources to sell stock in the company to FTS Financial Investments. Crichton agreed that if the transaction involved equity financing through the sale of stock in the company, ESP Resources would not be required to repay any sums that FTS Financial Investments transferred to it. She also conceded that FTS Financial Investments transferred the sums at issue directly to ESP Resources, and that BWC Management did not have a written agreement with FTS Financial Investments regarding the loans or FTS Financial Investment's alleged right to repayment from BWC Management. Instead, she testified, the

4

agreement between BWC Management and FTS Financial Investments was an oral one.

ESP Resources also sought to cross-examine Crichton about the relationship between Metcalfe and Crichton's ex-husband, Bob Vukovich, and their alleged involvement in a stock price-fixing scheme. BWC Management had secured a pretrial ruling requiring the defense to raise the subject of price-fixing with the court before putting on evidence about it or a related lawsuit brought against Metcalfe by the Securities and Exchange Commission. Defense counsel raised this issue with the court during Crichton's cross-examination, arguing that evidence of price-fixing was admissible to show that the loans at issue were a fraud, designed to inflate ESP Resources' stated liabilities in furtherance of the stock price-fixing scheme. The trial court limited cross-examination to questions concerning Metcalfe's and Vukovich's respective roles in securing financing for the company and directed defense counsel not to raise the issue of price-fixing.

During his testimony, Dugas agreed that Metcalfe was the chief executive officer of ESP Resources during the period in which the promissory notes were executed and that Dugas did not assume this role until August 2010. Dugas was aware of the notes before becoming chief executive officer. He agreed that documentation filed with the Securities and Exchange Commission listed the sums stated in these notes as company debts and that the company's filings continued to

do so even after he became its chief executive officer. He acknowledged the authenticity of the audit-related February 2012 correspondence between ESP Resources and BWC Management regarding the amount the former owed the latter on the notes and that it bore his signature, and he testified that he personally had not issued stock to FTS Financial Investments. Dugas agreed that ESP Resources has not made any payment on the notes.

Counsel for BWC Management questioned Dugas about documents obtained from an accounting firm retained by ESP Resources, BDO Canada. These documents were accompanied by a business-records affidavit executed by a custodian of records for BDO Canada. ESP Resources objected to their admissibility on the ground that the records were hearsay and lacked an adequate foundation, but the trial court overruled these objections. Dugas then testified that BDO Canada conducted an audit necessary to make annual filings required by the Securities and Exchange Commission in the 2007–2008 timeframe, and that BDO Canada's audit-related records included information relating to the sums that BWC Management ostensibly loaned to ESP Resources, including copies of the promissory notes. Dugas conceded that, as a result of the audit, ESP Resources identified the sums stated in the notes as company debts, including in its 2008 and 2012 annual reports filed with the Securities and Exchange Commission. Dugas signed the latter report in his capacity as the company's chief executive officer.

Dugas testified that BWC Management did not fund the promissory notes, but did not dispute that ESP Resources had received the sums at issue. Instead, he suggested that the funds ESP Resources received from FTS Financial Investments were for the purchase of company stock and, therefore, did not require repayment. He pointed to a February 2008 report filed with the Securities and Exchange Commission describing an equity financing agreement between ESP Resources and FTS Financial Investments. And he testified that aspects of BDO Canada's audit-related records suggested that FTS Financial Investments had purchased equity in ESP Resources rather than lending it money. On cross-examination, however, Dugas conceded that portions of BDO Canada's audit-related records referred to each of the sums stated in the promissory notes and characterized these sums as loans, but noted that some of these comments were handwritten.

During its deliberations, the jury asked for clarification regarding whether the handwritten notes contained in BDO Canada's audit-related records were "legally valid." The trial court informed the jury—without objection from the parties—that it had the evidence and could give it whatever weight it deemed appropriate. The jury subsequently found that ESP Resources owed BWC Management the sums stated in the three promissory notes. The trial court entered judgment on the verdict.

**DISCUSSION**

**I.    Admission of Evidence**

ESP Resources challenges the trial court's rulings admitting the Swiss bank records and the Canadian audit records. First, ESP Resources maintains that the trial court should have excluded the two Swiss bank confirmation forms showing transfer of sums associated with the second and third promissory notes as hearsay and not adequately authenticated. *See* TEX. R. EVID. 802, 901(a). ESP Resources notes that the forms are statements made by an absent third party—the Swiss bank—and were offered to document that the transfer of funds occurred. It contends that Crichton, as the president and sole shareholder of BWC Management, was not in a position to authenticate the forms, as they were created by a foreign bank and document a transaction between two other entities, ESP Resources and FTS Financial Investments.

Second, ESP Resources contends that the trial court should have excluded the audit records obtained from BDO Canada as hearsay and not authenticated. *See* TEX. R. EVID. 802, 901(a). Though these records are accompanied by an affidavit from a custodian of records for BDO Canada attesting that they are its business records, ESP Resources maintains that the proof also must show that ESP Resources adopted these documents as its own records to satisfy the business-records exception to the hearsay rule and contends that the handwritten notes in these audit records are hearsay within hearsay. *See* TEX. R. EVID. 803(6), 805.

8

BWC Management responds that the Swiss bank forms are admissible as its own business records, because Crichton testified that the forms served as written confirmation to her that the sums associated with the second and third promissory notes had been funded. *See* TEX. R. EVID. 803(6). It likewise maintains that BDO Canada's audit records were accompanied by a business records affidavit and that the records, including the handwritten notes within them, are therefore admissible under the business-records exception to the hearsay rule. *See* TEX. R. EVID. 803(6), 902(10). Accordingly, it maintains that the trial court did not error in admitting these exhibits, and because other evidence established the funding of the loans, any error in the admission of the records was harmless.

## A.    Standard of Review

Decisions about the admission of evidence are within a trial court's discretion. *Levine v. Steve Scharn Custom Homes, Inc.*, 448 S.W.3d 637, 656 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). It abuses this discretion when its evidentiary rulings are unreasonable, arbitrary, or indifferent to any guiding rules or principles. *Badall v. Durgapersad*, 454 S.W.3d 626, 641 (Tex. App.—Houston [1st Dist.] 2014, pet. denied).

A party seeking reversal based on the erroneous admission of evidence must establish that the error probably resulted in an improper judgment. *H2O Sols., Ltd. v. PM Realty Grp., LP*, 438 S.W.3d 606, 621 (Tex. App.—Houston [1st Dist.] 2014,

pet. denied). In general, this requires the complaining party to show that the judgment turns on the erroneously admitted evidence. *Id.* Thus, we ordinarily will not reverse a trial court's judgment on the basis of erroneously admitted evidence if it was cumulative and not controlling on a material dispositive issue. *Lone Starr Multi-Theatres, Ltd. v. Max Interests, Ltd.*, 365 S.W.3d 688, 702 (Tex. App.— Houston [1st Dist.] 2011, no pet.).

## B. Applicable Law

Hearsay—a statement other than one made by a declarant while testifying at trial that is offered for its truth—is generally inadmissible. TEX. R. EVID. 801–02. But this general rule is subject to exceptions, including one for business records. TEX. R. EVID. 803(6). The business-records exception covers records kept in the course of a regularly conducted business activity, so long as the records were made at or near the time, based on personal knowledge, recording a regular practice of that activity, and the party opposing the evidence does not show that the document is otherwise untrustworthy. *Id.*

When a party seeks to introduce a document created by one business as the records of another company under the business-records exception, it also must show that the document in question was incorporated and kept in the course of the business of the second company, that the second company usually relies on the accuracy of the document's contents, and that the circumstances otherwise indicate that the

10

document is trustworthy. *Simien v. Unifund CCR Partners*, 321 S.W.3d 235, 240–41 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

Even when a document is admissible under an exception to the hearsay rule, portions of its contents nonetheless may remain hearsay. *See* TEX. R. EVID. 805*; see also Texas Worker's Comp. Comm'n v. Wausau Underwriters Ins.*, 127 S.W.3d 50, 61 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) ("Even though a document is admissible pursuant to a hearsay exception, further objections to hearsay contained within the document must be examined separately."). Handwritten notes, however, may be admissible under the business-records exception. *Barnhart v. Morales*, 459 S.W.3d 733, 743–44 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (holding that trial court did not abuse its discretion in admitting hospital's typewritten records containing handwritten notes).

The proponent of a document also must authenticate it by providing proof that the document is what the proponent claims it is. TEX. R. EVID. 901(a). One can satisfy this foundational requirement in a variety of ways, including via circumstantial evidence. *E.g.*, *United Rentals, Inc. v. Smith*, 445 S.W.3d 808, 813 (Tex. App.—El Paso 2014, no pet.). Documents accompanied by an adequate business-records affidavit are self-authenticating and do not require any further proof of their authenticity. TEX. R. EVID. 902(10); *H20 Sols.*, 438 S.W.3d at 622.

## C.    Analysis

The Swiss bank forms showing transfer of funds from FTS Financial Investments to ESP Resources are inadmissible hearsay. No witness testified on behalf of the bank at trial, the forms were not accompanied by a business-records affidavit, and BWC Management introduced this evidence for the purpose of proving that ESP Resources had received the sums stated in the forms from a third party. This renders them hearsay. *See* TEX. R. EVID. 801. Neither Crichton nor Dugas testified to the foundation necessary to meet the business records hearsay exception to demonstrate their admissibility, and no other indicia of trustworthiness of the records was established at trial. *See* TEX. R. EVID. 802.

Nevertheless, admission of the forms did not result in an improper judgment. Dugas did not deny that ESP Resources had received the sums reflected in the confirmations. Instead, ESP Resources contends that FTS Financial Investments, rather than BWC Management, either loaned these sums to ESP Resources or received stock in return. In other words, ESP Resources does not contend that it did not receive these funds; it contends that it did not receive them in connection with the funding of the promissory notes. Because ESP Resources does not deny receipt of the funds, which is all the Swiss bank forms purport to show, the judgment cannot have turned on this particular evidence.

12

It was within the trial court's discretion to admit BDO Canada's audit-related records. These documents were accompanied by an unchallenged affidavit made by a custodian of records for BDO Canada. The custodian's affidavit establishes their authenticity and the applicability of the business-records exception to the hearsay rule. TEX. R. EVID. 803(6), 902(10). The handwritten notes contained within the records does not alter this conclusion. As our sister court concluded in *Barnhart*, handwritten notes contained within documents that are accompanied by a properly executed business-records affidavit may fall within the scope of the business-records exception to the hearsay rule. 459 S.W.3d at 743–44.

Citing *Simien*, ESP Resources contends that the custodian's affidavit alone does not establish the applicability of the business-records exception, because the records are those of a third party. *See* 321 S.W.3d at 240–45. But *Simien* is inapposite. BDO Canada's records were offered into evidence as that company's own documents made in connection with an audit of ESP Resources. Although BDO Canada's audit records include copies of the promissory notes, ESP Resources stipulated to the admissibility of the promissory notes, and the custodian verified that BDO Canada possessed them in connection with its audit work. Having done so, ESP Resources cannot complain that the inclusion of copies of these notes amongst the audit records runs afoul of *Simien*'s requirements for third-party documents retained by another business as its own records. *See id.*

We hold that the trial court's admission of the complained-of evidence is not reversible error. *See H2O Sols.*, 438 S.W.3d at 621; *Lone Starr*, 365 S.W.3d at 702.

## II. Exclusion of Evidence

ESP Resources maintains that the trial court erred in excluding evidence about the Securities and Exchange Commission's lawsuit and judgment against Metcalfe and the role that Crichton's ex-husband, Vukovich, played in this price-fixing scheme. It contends that this evidence is probative of its defense that the promissory notes were a fraudulent scheme engaged in by Metcalfe and Vukovich and that it bears upon the credibility of the parties who facilitated the supposed loan transactions. BWC Management responds that ESP Resources has not preserved its complaint about the exclusion of this price-fixing evidence for review, and in any event, it was properly excluded at irrelevant.

### A. Standard of Review

A trial court's decision to exclude evidence rests within its sound discretion and is subject to the same standard of review that governs its admission of evidence. *See, e.g.*, *Scottsdale Ins. Co. v. Nat'l Emergency Servs., Inc.*, 175 S.W.3d 284, 297 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). To preserve a complaint about the trial court's exclusion of evidence, "the complaining party must demonstrate the substance of the excluded evidence through an offer of proof or bill of exception unless the substance of the evidence is apparent from the context." *Compton v.*

*Pfannenstiel*, 428 S.W.3d 881, 885 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *see also Wade v. Comm'n for Lawyer Discipline*, 961 S.W.2d 366, 374 (Tex. App.—Houston [1st Dist.] 1997, no writ) (per curiam) (holding that error was not preserved because the complaining party "made no offer of proof to identify for the trial court the content of the documents or testimony he now complains were excluded"); *Walker v. Kleiman*, 896 S.W.2d 413, 417 (Tex. App.—Houston [1st Dist.] 1995, no writ) (same). The purpose of this requirement is to ensure that the evidence in question is articulated with the specificity necessary to permit the appellate court to assess its admissibility. *Lone Starr*, 365 S.W.3d at 703.

## B. Analysis

ESP Resources twice sought to introduce evidence about the Securities and Exchange Commission's investigation of an alleged price-fixing scheme concerning ESP Resources' stock and a judgment that the Commission obtained against Metcalfe and Vukovich regarding price-fixing. During his cross-examination of Crichton, counsel attempted to question her about Metcalfe's and Vukovich's alleged price-fixing activities, arguing to the court that the loans stated in the promissory notes were a fraud committed in furtherance of these activities. Counsel also sought to elicit testimony on this subject from Dugas, and in particular, that Metcalfe had resigned as chief executive officer of ESP Resources as a result of the

15

accusation that he was manipulating its stock price and that the Securities and Exchange Commission obtained a judgment against Metcalfe.

The trial court excluded this evidence on both occasions. ESP Resources, however, neither made an offer of proof nor filed a formal bill of exception regarding the evidence that the trial court excluded. Consequently, the record on appeal does not include any pleadings filed in the lawsuit brought by the Securities and Exchange Commission or the judgment it obtained against Metcalfe and Vukovich. The nature of the allegations made by the Securities and Exchange Commission and the content of the judgment are unknown. In addition, the facts to which Crichton and Dugas would have testified—as opposed to the general subject matter on which they would have been questioned by counsel—do not appear anywhere in the record. Without these particulars, it is impossible to assess whether or to what degree the price-fixing scheme was relevant to the execution of the promissory notes and whether any probative value may have been substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 401, 403. Nor is it possible without these details to assess whether this proffered evidence would have amounted to impermissible proof of other wrongs to show conduct in conformity or been admissible for another purpose. *See* TEX. R. EVID. 404(b).

Because there is no offer of proof on the record or a formal bill of exception, we cannot determine the substance and admissibility of the excluded evidence on

16

appeal. We therefore hold that this issue is not preserved for our review. *Wade*, 961 S.W.2d at 374; *Walker*, 896 S.W.2d at 417.

## III.    Legal and Factual Sufficiency

ESP Resources next maintains that the admissible evidence is legally and factually insufficient to support the jury's verdict. In particular, it contends that the proof shows that a third party, FTS Financial Investments, either made the loan or purchased an equity interest in ESP Resources, and no documentary proof connects FTS Financial Investments' funding to  BWC Management's promissory notes. In essence, ESP Resources contends that there is no proof that ESP Resources received money from BWC Management.

### A.    Standard of Review

To show that the evidence is legally insufficient, a party that did not bear the burden of proof at trial must establish that there is no evidence to support the contested finding. *Heritage Hous. Dev., Inc. v. Carr*, 199 S.W.3d 560, 565 (Tex. App.—Houston [1st Dist.] 2006, no pet.). We will sustain a legal insufficiency challenge if there is a total lack of proof or the proof is no more than a scintilla, rules of law or evidence bar us from giving weight to the only supporting proof, or the proof conclusively establishes the opposite of the finding. *Id.* But the evidence also must be viewed in the light most favorable to the verdict. *Id.* The ultimate question

is whether the proof, viewed in that light, would permit reasonable, fair jurors to render the challenged verdict. *Id.*

When reviewing the evidence for factual sufficiency, we consider all of the proof that supports and contradicts a particular finding and set aside the verdict only if the finding is so contrary to the overwhelming weight of the proof that it is clearly wrong and unjust. *Indian Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 693 (Tex. App.—Houston [1st Dist.] 2007, no pet.). The jury is the sole judge of the witnesses' credibility and the weight their testimony merits. *Id.* It may choose to believe one witness over another and resolve inconsistencies in the testimony. *Id.*; *Dyer v. Cotton*, 333 S.W.3d 703, 709 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

### B. Analysis

### 1. Legal Sufficiency

ESP Resources stipulated to the admissibility of the promissory notes. These notes reflect the amounts that ESP Resources owes to BWC Management and are signed by Metcalfe, who was the chief executive officer of ESP Resources' predecessor when the notes were executed. BWC Management's sole shareholder and president, Crichton, testified that she negotiated this transaction with Metcalfe and borrowed these sums from FTS Financial Investments, which transferred them directly to ESP Resources. Crichton also testified that she confirmed with Metcalfe and FTS Financial Investments that ESP Resources received the funds loaned. ESP

18

Resources' filings with the Securities and Exchange Commission reported these sums as debts. And ESP Resources also had written BWC Management to confirm that the two companies' records agreed regarding the amount of these debts. This correspondence was signed by its current chief operating officer, Dugas, who conceded its authenticity.

While the defense sought to undermine this evidence and put on contrary proof, we cannot conclude on this record that no evidence supports the jury's findings in favor of BWC Management. Even disregarding the proof that ESP Resources contends should not have been admitted, the record contains legally sufficient proof of its liability for the amounts owed in the promissory notes. We hold that the evidence is sufficient to permit reasonable, fair-minded jurors to reach the verdict under review. *Heritage Hous.*, 199 S.W.3d at 565.

### 2.    Factual Sufficiency

A review of the factual sufficiency of the proof requires us to consider not only the proof supporting the verdict, but also that which does not. *Indian Beach*, 222 S.W.3d at 693. Crichton conceded that BWC Management lacked documentation between BWC Management and ESP Resources other than the promissory notes themselves and the February 2012 audit-related correspondence signed by Dugas. ESP Resources filed with the Securities and Exchange Commission a form that shows that FTS Financial Investments agreed to purchase

19

an equity interest in ESP Resources; Dugas suggested that the funds received were to purchase this equity interest. And Crichton agreed that, if this was so, ESP Resources would have no obligation to repay these sums.

Notwithstanding this controverting evidence, we conclude that that the proof is factually sufficient to support the jury's findings. In large part, the jury was required to decide which of the two witnesses it found more credible on the issue of the funding of the notes, Crichton or Dugas. This credibility determination is within the jury's sole province. *See Indian Beach*, 222 S.W.3d at 693; *Dyer*, 333 S.W.3d at 709. The documentary evidence that was admitted tilts in favor of BWC Management's claims, including the notes themselves and ESP Resources' own documents—its 2008 and 2012 annual reports filed with the Securities and Exchange Commission and its February 2012 audit-related correspondence to BWC Management. Based on this evidence, the jury reasonably could have rejected the equity-purchase defense. Accordingly, we hold that the evidence is factually sufficient to support the judgment. *Indian Beach*, 222 S.W.3d at 693.

## CONCLUSION

We hold that the record fails to show reversible error in the admission or exclusion of evidence, and that the evidence adduced at trial was legally and factually sufficient to support the jury's verdict. We therefore affirm the judgment of the trial court.

Jane Bland
Justice

Panel consists of Justices Bland, Brown, and Lloyd.