Harold L. FRANCE *v.* FORD MOTOR CREDIT COMPANY

95-612                                      913 S.W.2d 770

Supreme Court of Arkansas
Opinion delivered January 22, 1996

168

*Lingle & Corley*, by: *James G. Lingle*, for appellant.

*Griffin Smith*, for appellee.

DAVID NEWBERN, Justice. This is a replevin case. The appellant, Harold L. France, bought a used tractor and entered an installment contract to pay the appellee, Ford Motor Credit Company (Ford Credit), for it. Mr. France tried on two occasions to prepay the full obligation, as permitted by the contract, by personal check. Because of errors which occurred in the encoding of the first check and in drawing the second one, Mr. France's account was debited for only small portions of the amount due. Mr. France thereafter refused to pay the balance. Ford Credit sought to replevy the tractor. Mr. France claimed, and argues on appeal, that the obligation was "suspended" according to Ark. Code Ann. § 4-3-310 (Repl. 1991) and, therefore, Ford Credit was not entitled to replevin. Mr. France also

contended, and now argues, that Ford Credit's remedy is against its agent which made the encoding error and not against Mr. France. The Trial Court held replevin was proper, and we affirm.

The purchase price of the tractor was $10,035. Mr. France paid $2,000 down. The amount that remained, including finance charges, was $9,845.76. Mr. France was to make 47 monthly payments of $205.12 beginning on September 23, 1993.

Prior to the date that the first installment was due, Mr. France elected to pay the balance in full. After deducting items such as unearned interest and insurance cancellation rebate, the outstanding balance was $8,506.19. On August 11, 1993, Mr. France's spouse, Connie S. France, an attorney, drew check #2224 on their joint account at the Bank of Eureka Springs to the order of Ford Credit for that amount. As directed by the contract, the check was sent to a Dallas, Texas, address.

The address was that of a box monitored by Mellon Financial Services (Mellon). Under agreement with Ford Credit, Mellon encoded the amount of the check, using magnetic ink, in the lower right-hand corner and forwarded it to Ford Credit's depositary bank in Dallas, Texas Commerce Bank. The encoding was done incorrectly in the amount of $506.19 rather than $8,506.19 The magnetic ink encoding enables the next bank in the chain of collection to process the check mechanically.

Texas Commerce Bank processed the check mechanically, crediting Mr. France with $506.19. Mr. France's check was then forwarded to the Bank of Eureka Springs, the bank upon which it was drawn. The Bank of Eureka Springs debited the France account $506.19.

The encoding error was discovered, and on September 13, 1993, Ms. France attempted to draw a second check, #2313, for the remaining $8,000 balance. In the place on the check where the amount is shown numerically, the figure "$8,000.00" appeared; however, on the line where the amount is written out Ms. France wrote "Eight dollars and 00/100."

Check #2313 was sent through the same channels as the previous check. Mellon made another error and encoded the check, not for $8,000 or for $8, but for $800. These words

appear to have been stamped on the front of the check: "AMOUNT GUARANTEED TO BE," and immediately below appears the handwritten figure "8,000."

Texas Commerce Bank credited $800 to the France account with Ford Credit and sent #2313 on to the Bank of Eureka Springs. As words prevail over numbers, Ark. Code Ann. § 4-3-114 (Repl. 1991), the Bank of Eureka Springs debited the France account $8.00, and notified Texas Commerce Bank which reversed the $800.00 credit and substituted $8.00. Ford Credit thus was paid $8.00. Mr. France's account has been charged, and Ford Credit has received, a total of $514.19, leaving a balance of $7992. Ford Credit filed its complaint for replevin of the tractor on October 12, 1994. The "guarantee" was apparently ignored in the collection process.

### 1. Replevin

Section 4-3-310 deals with the effect of an uncertified check issued in payment of an underlying obligation such as the contract in this case. The statute, in pertinent part, provides:

4-3-310. EFFECT OF INSTRUMENT ON OBLIGATION FOR WHICH TAKEN.

(a) Unless otherwise agreed, if a certified check, cashier's check, or teller's check is taken for an obligation, the obligation is discharged to the same extent discharge would result if an amount of money equal to the amount of the instrument were taken in payment of the obligation. Discharge of the obligation does not affect any liability that the obligor may have as an indorser of the instrument.

(b) Unless otherwise agreed and except as provided in subsection (a), if a note or an uncertified check is taken for an obligation, the obligation is suspended to the same extent the obligation would be discharged if an amount of money equal to the amount of the instrument were taken, and the following rules apply:

(1) In the case of an uncertified check, suspension of the obligation continues until dishonor of the check or until it is paid or certified. Payment or certification of the

check results in discharge of the obligation to the extent of the amount of the check.

***

As Mr. France does not contend his obligation has been discharged, the first sentence of § 4-3-310(b)(1) providing for "suspension of the obligation" is all that is at issue. We have found no case or other authority which addresses the facts presented here, but the language of the statute leaves us with little doubt as to the proper resolution of this case. It does no more than recognize the uncertainty attendant upon an uncertified and unpaid check and suspends the obligation until that uncertainty is resolved. *See Cornwell v. Bank of America Nat. Trust and Sav. Ass'n,* 274 Cal. Rptr. 322 (1991). In this case, the two checks submitted to Ford Credit have been paid, but in amounts less than the amount owed. The suspense is over, and all are aware of the amount of Mr. France's obligation to Ford Credit which has yet to be satisfied. In this case, the statute provides no defense to the replevin action.

### 2. Other remedies

Mr. France contends Ark. Code Ann. § 4-4-209 (Repl. 1991) provides Ford Credit a remedy against Mellon which should have been pursued rather than the replevin action against him. Section 4-4-209 provides:

ENCODING AND RETENTION WARRANTIES.

(a) A person who encodes information on or with respect to an item after issue warrants to any subsequent collecting bank and to the payor bank or other payor that the information is correctly encoded. If the customer of a depositary bank encodes, that bank also makes the warranty.

***

(c) A person to whom warranties are made under this section and who took the item in good faith may recover from the warrantor as damages for breach of warranty an amount equal to the loss suffered as a result of the breach, plus expenses and loss of interest incurred as a result of the breach.

The statute provides warranties to collecting banks and payors but not to a payee such as Ford Credit.

■ The record does not show how the "guarantee" appeared on the check or who placed it there. Mr. France's argument assumes it to have been stamped and written on the check by Mellon and thus that it could have formed the basis of recovery by Ford Credit against Mellon. Nothing in the record suggests that Mr. France in any way guaranteed the check to be for $8,000 or was asked by Mellon or any other bank in the collection chain to do so. No authority whatever is cited for the contention that the "guarantee" limited Ford Credit's remedies against Mr. France. Nor does he cite any authority or render convincing argument that the "guarantee" resolved the conflict between the written and figure amounts on the check. Certainly the Bank of Eureka Springs and Texas Commerce Bank did not consider it to have had any effect. Absent any citation of authority or convincing argument, we decline to consider the argument. *Neal* v. *Wilson,* 321 Ark. 70, 900 S.W.2d 177 (1995).

Affirmed.

GLAZE, J., concurs.

BROWN, J., not participating.