**Opinion issued February 19, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00449-CV

———————————

**CHARLES R. TIPS FAMILY TRUST, HAZEL W. TIPS FAMILY TRUST, AND CHARLES T. WATKINS, Appellants**

**V.**

**PB COMMERCIAL LLC, Appellee**

---

**On Appeal from the 189th District Court**
**Harris County, Texas**
**Trial Court Case No. 2012-01406**

---

## O P I N I O N

The parties to this appeal entered into a residential loan agreement and guaranty for the principal amount of "ONE MILLION SEVEN THOUSAND AND NO/100 ($1,700,000.00) DOLLARS." The loan documentation thus identified the amount of the loan in two different ways, with one number favoring the

borrower—one million seven thousand—written out in words and a larger number favoring the bank—$1,700,000—set out in numerals. The bank alleged a default on the loan, and litigation ensued. The parties filed competing motions for summary judgment, and the trial court rendered a final summary judgment in favor of the bank.

The borrowers and their guarantor appeal, arguing that the written words control the meaning of the document and that the note has been satisfied in full. Applying the well-settled interpretive rule that "words prevail over numbers" in the event of such a discrepancy, we reverse in part, affirm in part, and remand the case to the trial court for further proceedings.[1]

## Background

In 2007, the Charles R. Tips Family Trust and the Hazel W. Tips Family Trust executed a "Balloon Real Estate Note" in favor of Patriot Bank. The note was secured by real property in Harris County pursuant to a "Deed of Trust and Security Agreement." The same day, Charles Watkins, a trustee of both trusts, executed a "Guaranty Agreement" in favor of Patriot Bank, obligating himself to

---

[1]     On August 19, 2014, we issued our original opinion in this case. PB Commercial filed a motion for rehearing and motion for rehearing en banc. We deny the motion for rehearing, but we withdraw our opinion and judgment of August 19, 2014, and we issue this opinion and a new judgment in their stead. Accordingly, we dismiss the motion for rehearing en banc as moot. *See, e.g.*, *Brookshire Bros., Inc. v. Smith*, 176 S.W.3d 30, 41 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

personally pay the loan if the trusts defaulted on their payment obligations. The note, the security agreement, and the guaranty agreement all described the principal amount of the loan as follows:

ONE MILLION SEVEN THOUSAND AND NO/100 ($1,700,000.00) DOLLARS

This language appears five times in the three documents, in exactly the same form each time, and no other language in the documents describes the amount of the loan.

Before the note matured, the trusts made payments totaling $595,586. Neither the trusts nor Watkins made any further payments, and Patriot Bank initiated this action to collect the balance due on the note as well as unpaid interest. PB Commercial, LLC ("PBC") subsequently acquired the note and sold the property securing it at auction for $874,125. PBC was then substituted as plaintiff.

PBC filed a motion for traditional summary judgment, seeking recovery on both the note and the guaranty agreement. PBC argued that the original principal amount of the loan was $1,700,000, and on that basis it calculated a deficiency under the note and guaranty agreement of $815,214.50 after application of all payments and the proceeds from the foreclosure sale. PBC attached the note, security agreement, and guaranty agreement to its motion, but it made no mention of the conflict between the printed words and numerals. It also attached a payment

3

history showing how Patriot Bank applied payments against the loan, treating the principal amount as $1,700,000.

The trusts and Watkins responded by amending their answer, filing a counterclaim, responding to PBC's motion for summary judgment, and filing a cross-motion for summary judgment. In these filings, the trusts and Watkins argued that the original principal amount of the loan under the note and guaranty agreement was $1,007,000. They argued that both documents are negotiable instruments governed by Section 3.114 of the Texas Business and Commerce Code, which provides: "If an instrument contains contradictory terms, typewritten terms prevail over printed terms, handwritten terms prevail over both, and words prevail over numbers." TEX. BUS. & COM. CODE § 3.114. According to the trusts and Watkins, applying past payments and the foreclosure sale proceeds to the lower amount leads to the conclusion that the note was fully satisfied after the foreclosure sale and, in fact, PBC has collected a surplus of $189,111 beyond the amount to which it was entitled.

The amended answer included a counterclaim, which sought a declaration that:

(a) the . . . Note . . . was for the original principal amount of $1,007,000; and not $1,700,000;

(b) the Note has been fully paid and satisfied as a result of the payments made thereon prior to the Trusts' alleged default, and the amount collected by Plaintiff through the post-default foreclosure

4

upon and sale of the real property pledged as security under the Note;

(c) Watkins is relieved of any further obligation under the Guaranty; and

(d) [PBC] is retaining and holding money obtained through the foreclosure sale that is in excess of the amount necessary to fully pay and satisfy the amounts due under the Note.

The counterclaim also sought unspecified statutory damages under the Business and Commerce Code and an award of attorney's fees. Notably, however, the cross-motion for summary judgment requested only that the trial court deny PBC's motion and award the trusts the alleged surplus resulting from the foreclosure sale. The cross-motion did not mention the claims for attorney's fees or statutory damages, nor did it provide any legal basis or evidentiary support for those claims.

After a pair of hearings, the trial court granted PBC's motion and denied the cross-motion filed by the trusts and Watkins. The trial court's final judgment awarded PBC damages in the amount of $815,214.50, prejudgment and postjudgment interest, court costs, and trial and appellate attorney's fees. The trusts and Watkins appeal.

**Analysis**

This appeal presents one issue: whether the amount of the loan must be determined from the printed words in the note or from the entire context of the transaction, including evidence of the amount of money that Patriot Bank actually made available to the borrowers. Once we have determined the amount of the loan,

5

the trusts and Watkins ask us to reverse the trial court's judgment as to PBC's claims and render judgment in their favor or remand for further proceedings.

This court reviews an order granting or denying a motion for summary judgment de novo. *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). When both parties moved for summary judgment and the trial court granted one and denied the other, we "review the summary judgment evidence presented by each party, determine all questions presented, and render judgment as the trial court should have rendered." *Id*. We may affirm the judgment that the trial court rendered or reverse and render the judgment that the trial court should have rendered. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

The trusts and Watkins characterize the "Balloon Real Estate Note" as a promissory note[2] and as a negotiable instrument,[3] and PBC does not dispute this characterization. To recover on a promissory note on which the borrower has defaulted, PBC was required to prove that (1) the note existed, (2) the maker or makers of the note signed it, (3) it was the legal owner and holder of the note, and (4) a certain balance was due and owing on the note. *See, e.g.*, *Wells Fargo Bank,*

---

[2]     A "promissory note" is: "An unconditional written promise, signed by the maker, to pay absolutely and in any event a certain sum of money either to, or to the order of, the bearer or a designated person." BLACK'S LAW DICTIONARY 1226 (10th ed. 2014).

[3]     *See* TEX. BUS. & COM. CODE § 3.104(a)–(d).

6

*N.A. v. Ballestas*, 355 S.W.3d 187, 191 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Clark v. Dedina*, 658 S.W.2d 293, 295 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd).

To recover on the guaranty agreement, PBC was required to prove "the existence and ownership of the guaranty contract, the terms of the underlying contract by the holder, the occurrence of the conditions upon which liability is based, and the failure or refusal to perform by the guarantor." *McShaffry v. Amegy Bank Nat'l Ass'n*, 332 S.W.3d 493, 496 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *see also Wasserberg v. Flooring Servs. of Tex., LLC*, 376 S.W.3d 202, 205 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

To recover the amount remaining due under the note and guaranty agreement after the foreclosure sale, PBC was required to prove "(1) the amount due on the note at the time of foreclosure, (2) that proper notice of acceleration had been given, (3) that a valid foreclosure sale was made and (4) that [PBC] has given credit to the [debtors] for the amount received at the trustee's sale and any other legitimate credits." *Carruth Mortg. Corp. v. Ford*, 630 S.W.2d 897, 899 (Tex. App.—Houston [1st Dist.] 1982, no writ); *see also Collins v. Bayview Loan Servicing, LLC*, 416 S.W.3d 682, 686 (Tex. App.—Houston [14th Dist.] 2013, no pet.). When a party holding a security interest recovers more than the amount of the obligation, it must pay out any amounts due to certain third parties, then

7

account for and pay to the debtor the remaining surplus. TEX. BUS. & COM. CODE § 9.615(d)(1); *see also id.* § 9.615(a), (c).

If a written instrument is worded in such a way that it can be given a definite or certain legal meaning, then the contract may be construed as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). "An unambiguous contract will be enforced as written, and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports." *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (per curiam).

Whether a contract is ambiguous is a question of law, which we review de novo. *Coker*, 650 S.W.2d at 394. When a contract contains an ambiguity, summary judgment is precluded because interpretation of the contract becomes a fact issue. *Id.* (citing *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex. 1979)).

A simple lack of clarity or disagreement between parties does not render a term ambiguous. *See DeWitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999). Rather, "[a]n ambiguity arises only after the application of established rules of construction leaves an agreement susceptible to more than one meaning." *Id.* "[F]or an ambiguity to exist, both potential meanings must be reasonable." *Id.* "Whether a contract is ambiguous is a question of law for the court to decide by

looking at the contract as a whole in light of the circumstances present when the contract was entered." *Coker*, 650 S.W.2d at 394. If the contract is ambiguous as a matter of law, only then is parol evidence of the parties' interpretation of the contract admissible. *Pitts & Collard, L.L.P. v. Schechter*, 369 S.W.3d 301, 313 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Texas law anticipates internal contradictions in both negotiable and non-negotiable instruments and provides for the resolution of such contradictions. Under the Uniform Commercial Code, which governs negotiable instruments such as the Note, "[i]f an instrument contains contradictory terms, typewritten terms prevail over printed terms, handwritten terms prevail over both, and words prevail over numbers." TEX. BUS. & COM. CODE § 3.114; *see also McNeese v. State*, 596 S.W.2d 906, 907 (Tex. Crim. App. [Panel Op.] 1980); *Taylor v. State*, 672 S.W.2d 262, 264 (Tex. App.—Waco 1984, no writ). "It is well settled that unambiguous written words prevail over arithmetic numbers in promissory notes." *First State Bank v. Keilman*, 851 S.W.2d 914, 920 (Tex. App.—Austin 1993, writ denied); *see also Duvall v. Clark*, 158 S.W.2d 565, 567 (Tex. Civ. App.—Waco 1941, writ ref'd w.o.m.) ("It is elementary that the written words of an instrument control and prevail over figures."). This rule derives from the principle that "writing words more likely represents the parties' true intentions than writing numbers." 6B LARY LAWRENCE, ANDERSON ON THE UNIFORM COMMERCIAL CODE § 3-114:5R (3d ed.

9

rev'd 2003); *see also* 6 WILLIAM D. HAWKLAND & LARY LAWRENCE, HAWKLAND & LAWRENCE UCC SERIES § 3.114:1 (1999) ("Words are preferred because writing words more likely effects the parties' true intentions than writing numbers."); *France v. Ford Motor Credit Co.*, 913 S.W.2d 770, 772 (Ark. 1996) (noting application of identical statute when individual wrote both "8,000.00" and "Eight dollars and 00/100" on check to creditor, resulting in payment of eight dollars). The same interpretive rule applies to non-negotiable instruments. *See Guthrie v. Nat'l Homes Corp.*, 394 S.W.2d 494, 495 (Tex. 1965).

## I.     Interpretation of contractual language

### A.     Unambiguity of loan amount

We first must examine whether the loan agreements are ambiguous. If so, then summary judgment was improper for that reason. *Coker*, 650 S.W.2d at 394; *Harris*, 593 S.W.2d at 306; *Simpson v. GEICO Gen. Ins. Co.*, 907 S.W.2d 942, 945 (Tex. App.—Houston [1st Dist.] 1995, no writ).

The Note, Security Agreement, and Guaranty Agreement each describe the original amount of the loan obligation as "ONE MILLION SEVEN THOUSAND AND NO/100 ($1,700,000.00) DOLLARS." The phrase "one million seven thousand and no/100 dollars" has a plain, unambiguous meaning, namely the sum of $1,007,000.00. Thus, the words and the numerals in the loan agreements are in conflict, differing by $693,000. This impact is magnified by the fact that the actual

10

amount of the loan affects the application of payments, resulting in different sums of interest due in each scenario.

In *Guthrie v. National Homes Corp.*, 394 S.W.2d 494 (Tex. 1965), the Supreme Court of Texas considered a similar case, in which the instrument in question stated that the obligor would pay "$5,780.00," which was written out as "Five Thousand Eighty and 00/100 Dollars." *Guthrie*, 394 S.W.2d at 495. The Court held that the words "Five Thousand Eighty and 00/100 Dollars" were unambiguous and controlled the numerals. *Id.* at 495–96. A jury had returned a verdict that, because $5,000 had been paid on the note, the obligor still owed $780. *Id.* at 494. In light of the unambiguous written words of the instrument, however, there was no fact issue regarding the original amount of the loan for the jury to consider, and the Court reduced the award to $80 to match the words of the instrument. *Id.* at 496. The Court recognized that the rule favoring words over numerals already applied to negotiable instruments such as promissory notes and held that the same rule applies to non-negotiable instruments. *Id.* at 495–96.

Similarly, in *First State Bank v. Keilman*, 851 S.W.2d 914 (Tex. App.—Austin 1993, writ denied), the parties' agreement stated that interest would be paid at the "prime rate . . . plus Two percent (12.5%)," but "12.5%" was crossed out and the number "2%" written in. *First State Bank*, 851 S.W.2d at 920. The court of appeals explained that "[i]t is well settled that unambiguous written words prevail

11

over arithmetic numbers in promissory notes." *Id.* Thus, even though handwritten or typed text ordinarily prevails over printed terms in an instrument, the alteration had no effect, as the written words would still control over the interpretation of the arithmetic numbers "12.5%" and "2%." *Id.*; *see also Duvall*, 158 S.W.2d at 567 (handwritten change from "$900.00" to "$930.00" was immaterial because written words setting payment at six percent of $15,000 controlled and were not altered).

Under the UCC and *Guthrie*, the rule that the written words control over numerals applies to all of the documents at issue in this dispute, both negotiable and non-negotiable instruments. TEX. BUS. & COM. CODE § 3.114; *Guthrie*, 394 S.W.2d at 495–96. It does not matter that the discrepancy between the words and numbers here is a large one. Neither Section 3.114 nor Texas case law makes a distinction on the basis of the size of the obligation or the significance of the conflict in terms. Indeed, at least one court has applied the logic of *Guthrie* in holding that words controlled over numbers when a discrepancy was even larger relative to the transaction size than it is here. In *In re Regency Chevrolet, Inc.*, 122 B.R. 60 (Bankr. S.D. Tex. 1990) (mem. op.), the bankruptcy court for the Southern District of Texas held that the terms "Seventeen Thousand Five Hundred Dollars ($10,000.00)" and "Seventeen Thousand Five Hundred Dollars ($14,000.00)" in two different leases created two monthly obligations of $17,500.00 each. 122 B.R. at 61–62 (citing *Guthrie*, 394 S.W.2d at 494).

PBC argues that this case presents a unique circumstance in that the omission of a single word transforms "one million seven hundred thousand" into "one million seven thousand." If the former phrase were modified in any other way, according to PBC, we would be faced with either an ambiguous term or an unambiguous but absurd one. For example, PBC posits a scenario in which a scrivener's error rendered the phrase as "one seven hundred thousand," omitting the word "million." According to PBC, such an amount would be ambiguous, and the court would have to refer to the numerals and extrinsic evidence to resolve the ambiguity. But this hypothetical scenario has no bearing on this case because there is no ambiguity in the text here. Indeed, in the scenario described by PBC, one could not even say that the terms contradict each other within the meaning of Section 3.114, as the meaning of one of the potentially conflicting terms would be ambiguous.

Alternatively, PBC suggests a scenario in which another scrivener's error replaced "million" with "billion," resulting in "one billion seven hundred thousand." This, PBC says, would result in the borrowers clamoring for relief and asking this court to consider evidence extrinsic to the contract. That may be, and the possibility of such an error demands careful review of proposed written agreements. But that is no basis upon which we may disregard well-settled and binding statutory and case law. We need not and do not express any opinion on

13

what legal or equitable remedies the parties might have in such a hypothetical scenario. On the appellate record before us, the only issue is what the terms of the written agreements mean as a matter of law. Neither party sought an equitable reformation of the loan in the trial court, so no issue of equitable relief has been presented in this appeal. The scenario proposed by PBC thus has no bearing on how we must apply the law to the record before us.

Here, the words "one million seven thousand" control over the numerals "$1,700,000" to set the amount of the promissory note and guaranty obligations.

## B. Irrelevance of extrinsic evidence

PBC also argues that the trial court properly considered evidence before it that the borrowers received $1,700,000 from Patriot Bank. But a court may not consider extrinsic evidence about a contract's meaning unless the contract is ambiguous. PBC does not contend that the documents are ambiguous; any material ambiguity in the contracts would have made summary judgment for PBC improper for that reason alone. *Coker*, 650 S.W.2d at 394; *Harris*, 593 S.W.2d at 306; *Simpson*, 907 S.W.2d at 945.

A document is ambiguous only if it is susceptible to more than one reasonable interpretation after application of all relevant rules of construction. *DeWitt Cnty. Elec. Coop.*, 1 S.W.3d at 100. Only one interpretation of the language in question is possible in light of controlling law.

The agreements unambiguously set the amounts of the promissory note and guaranty obligations at $1,007,000.00 each. Because the amount of principal set forth in the Note and Guaranty Agreement is not ambiguous, for purposes of interpreting the documents as a matter of law, neither the trial court nor this court may consider extrinsic evidence such as the amount of money that actually changed hands amongst the parties, and such evidence could not have supported the trial court's judgment. *Pitts & Collard*, 369 S.W.3d at 313.

## II. Application of summary judgment standard

### A. Motion for summary judgment filed by PBC

PBC argues that the trial court could have chosen to reform the agreements to give effect to what it claims was the substance of the parties' agreement or, alternatively, that we should reform the agreements in that way. PBC correctly observes that Texas courts are courts of equity as well as law, and therefore our district courts are empowered to "hear and determine any cause that is cognizable by courts of law or equity and may grant any relief that could be granted by either courts of law or equity." TEX. GOV'T CODE § 24.008; *see also Weaver v. Head*, 984 S.W.2d 744, 745 (Tex. App.—Texarkana 1999, no pet.). From these principles, PBC argues that Texas courts need not "follow blindly law that would render an unjust result when principles of equity would bring about a just result." Thus, PBC argues that the trial court may have given the Note its proper construction but then

elected to "correct the mistake of fact resulting from the scrivener's error" by reforming it to reflect a loan of $1,700,000.00, and such a reformation would have been a valid basis for the trial court's judgment. As support, PBC relies on the dissenting opinion in *Guthrie*, in which Justice Griffin stated his opinion that the majority should have allowed the jury verdict to stand, because he did not agree that the case law of that day supported a rule "as a matter of law that typewritten words prevail over typewritten figures in a simple contract." *Guthrie*, 394 S.W.2d at 497 (Griffin, J., dissenting).

We are not persuaded. As previously noted, PBC did not include any request for equitable reformation of the agreement in its petition, nor did it present any argument for equitable reformation in its motion for summary judgment. As such, that could not have been the basis for the summary judgment granted in PBC's favor. *See* TEX. R. CIV. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 339, 341 (Tex. 1993); *see also* TEX. R. CIV. P. 94 (affirmative defenses must be set forth affirmatively in responsive pleadings); *CenterPoint Energy Hous. Elec. L.L.P. v. Old TJC Co.*, 177 S.W.3d 425, 430 n.3 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (mutual mistake is affirmative defense that must be pleaded).

Having determined the terms of the parties' agreements, we must determine whether PBC was entitled to summary judgment.

To recover on the Note, PBC was required to prove that a certain balance was due and owing on the Note. *Clark*, 658 S.W.2d at 295. It has failed to do so and did not even address the correct amount of the loan in its motion for summary judgment. Further, to recover on the alleged deficiency, PBC was required to prove "the amount due on the note at the time of foreclosure." *Carruth Mortg. Corp.*, 630 S.W.2d at 899. This it has also failed to do. Instead, PBC's position depends on extrinsic evidence that the amount due should be calculated based on an amount other than the amount fixed by the Note. Because the trial court could not have considered such evidence, we hold that PBC was not entitled to summary judgment on its claims for damages, interest, costs, or attorney's fees stemming from the trusts' default under the Note.

To recover on the Guaranty Agreement, PBC was required to prove "the terms of the underlying contract by the holder." *McShaffry*, 332 S.W.3d at 496. Again, because PBC's claims depended on a misinterpretation of the unambiguous language of the Note, PBC has failed to demonstrate that it was entitled to summary judgment against Watkins under the Guaranty Agreement.

Because PBC did not establish each of the elements of any of its causes of action, it was not entitled to summary judgment. We will therefore reverse the trial court's judgment insofar as it granted judgment in favor of PBC on its affirmative claims.

## B.    Motion for summary judgment filed by the trusts and Watkins

Our inquiry does not stop here, however, as the trusts and Watkins argue that their motion for summary judgment was wrongly denied. When the parties file competing motions for summary judgment, on appeal we "review both sides' summary judgment evidence," "determine all questions presented," and "render the judgment that the trial court should have rendered." *FM Props.*, 22 S.W.3d at 872. We must therefore determine whether the trusts and Watkins were entitled to summary judgment.

In their motion, the trusts and Watkins argued that the amount of the Note was $1,007,000, resulting in the Note having been completely satisfied by the time that the lawsuit was filed. They argue that they made payments of $595,586, which, applied to the principal of $1,007,000, should have resulted in application of $273,600 to interest and $321,986 to principal. The foreclosure sale yielded an additional $874,125. Adding these numbers together yields total payments of $1,196,111. Based on a loan amount of $1,007,000, the trusts and Watkins conclude that PBC has recovered more than was due and that it now owes them $189,111.

The trusts and Watkins do not provide any explanation or evidentiary support for their calculations, either in their motion or in their briefs to this court. In fact, their motion did not attach any evidence whatsoever. Neither the evidence

in the record nor the parties' briefs provides any guidance for how the calculations are to be performed given the correct loan amount. Rather, the record contains only evidence of how the bank applied interest against the incorrect amount; when using the correct amount, only the results of the parties' respective calculations are given.

The record before us does not establish the amount of any surplus or that such a surplus exists. We have already held that the original amount of the loan as specified in the Note, Security Agreement, and Guaranty Agreement was $1,007,000, not $1,700,000, and we thus hold that the trusts and Watkins have established that they were entitled to summary judgment on their first request for declaratory relief, namely a legal declaration that "the . . . Note . . . was for the original principal amount of $1,007,000; and not $1,700,000." The trial court erred in denying this relief on the basis of the pleadings and record before it. Because the record provides no definitive basis for calculating the amount due at the time of the foreclosure sale or at the date of the trial court's judgment, however, the trial court did not err in denying the other declaratory relief requested. We note that even if the trusts and Watkins had entirely prevailed on their summary-judgment motion in the trial court, the rules of civil procedure would have permitted PBC an opportunity to assert the equitable claims that it referenced for the first time in its

appellate briefing. *See* TEX. R. CIV. P. 63. Accordingly, we will remand the case to the trial court for further proceedings consistent with this opinion.

## Conclusion

The amount due under the Note, Security Agreement, and Guaranty Agreement was determined by the written words therein, not the numerals. The judgment of the trial court regarding PBC's claims for affirmative relief is therefore reversed. We also reverse the judgment to the extent that it denied summary judgment to the trusts and Watkins on their first claim for declaratory relief. Further, because the trusts and Watkins were entitled to judgment on that claim, we render judgment that the principal amount of the loan as specified in the Note was $1,007,000.00.

We remand the case to the trial court for further proceedings consistent with this opinion.

Michael Massengale
Justice

Panel consists of Chief Justice Radack and Justices Massengale and Huddle.