**Opinion issued December 8, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-15-01079-CV

———————————

**HORIZON POOLS & LANDSCAPES, INC., Appellant**

**V.**

**NELSON SUCARICHI, Appellee**

---

**On Appeal from the 412th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 81251-CV**

---

## MEMORANDUM OPINION

This dispute arose from a contract to build a swimming pool. The trial court found that the contract required two pool lights and one spa light. Because the contractor installed only one pool light, the court awarded damages and attorney's

fees to the homeowner. Horizon Pools & Landscapes, Inc. appeals from the trial court's judgment for breach of contract. Finding no error, we affirm.

## BACKGROUND

Nelson Sucarichi sued Horizon for breach of contract and violation of the Deceptive Trade Practices Act, alleging that he had contracted for the construction of a pool with two pool lights, but Horizon installed just one. Because of this error, Sucarichi withheld the final payment owed on the contract. Sucarichi also sought to remove Horizon's construction lien against the property, which clouded the title to his home. The lien related to the remaining amount owed under the contract for the construction of the pool.

Horizon answered and counterclaimed for the amount of the contract price that Sucarichi had not paid.

The trial court granted a partial summary judgment in Sucarichi's favor, declaring that Horizon's lien was invalid and void. By agreement, the parties then tried the remaining claims to the bench. Sucarichi testified on his behalf and called Curt Olmstead, Horizon's President, as a witness. The defense called one additional witness, a Horizon employee, Lauren Olmstead.

Sucarichi identified the parties' contract, which the trial court admitted into evidence. Sucarichi testified that the contract called for the installation of three lights, two in the pool and one in the spa, but that Horizon installed only one of the

2

required pool lights. The contract distinguished between the pool and the spa, and Sucarichi testified that the lighting terms applicable to each were separate and distinct from one another. Sucarichi further testified that the handwritten terms of the contract were completed by Horizon's salesman, who had persuaded Sucarichi to have two lights installed in the pool due to its length. According to Sucarichi, the salesman told him that one light would not be sufficient to light the pool. Sucarichi testified that the bottom of the pool is not visible at night without the second light and that the lighting deficiency is exacerbated because Horizon placed the lone pool light in the shallow end rather than the deep end of the pool, which is six feet deep.

Based on three bids that he obtained, Sucarichi said it would cost either $7,823.30 or $7,923.60 for another company to install the missing pool light. An estimate for the latter amount was admitted into evidence without objection. Sucarichi testified that he had withheld $3,700 of the contract price because Horizon refused to install the second light.

Curt Olmsted testified that the handwriting in the contract belonged to a salesman who was no longer with the company. He agreed that the contract provided for two pool lights. He also agreed that the contract provided for one light in the spa. But he disagreed that the contract therefore called for the installation of three separate lights. He contended that the contract only required two lights total, one in the pool and one in the spa. He explained that the provision relating to the spa light

3

merely stated a wattage, which he contended did not denote a separate light fixture. Olmstead further explained that a pool light in a pool that is only six feet deep is inconsequential and that the bottom would be visible without one. Olmstead conceded, however, that he did not personally communicate with Sucarichi regarding the terms of the contract. He acknowledged that he was not present for the conversation between Sucarichi and the salesman. Olmstead also testified that his daughter, Lauren Olmstead, who runs the company's office, was not present when the company's salesman discussed the contract with Sucarichi. He stated that Sucarichi owed Horizon $3,960.40 for the completed pool.

Lauren Olmstead confirmed that the contract is printed by the company and that the handwritten portions are then completed by a company representative. Like her father, Lauren Olmstead testified that the contract required two lights total. However, she agreed that she was not present when Sucarichi signed the contract.

During closing arguments, Sucarichi's counsel emphasized a construction diagram of the combined pool and spa. He urged that the diagram showed separate and distinct structures that should be regarded independently of one another, including with respect to their lighting. This diagram was part of Horizon's file, which had been admitted into evidence by the defense at the beginning of trial. However, no witness testified about this diagram, and counsel for both Sucarichi and Horizon agreed that it was not part of the contract. Sucarichi's counsel also

4

represented that, if recalled to the stand, his client would testify that he had never seen it before trial. No evidence admitted at trial suggested otherwise.

The trial court rendered judgment in Sucarichi's favor from the bench. It subsequently entered a final judgment memorializing its rulings, including a take-nothing judgment in Sucarichi's favor on Horizon's counterclaim, and judgment for Sucarichi for $3,963.20 plus attorney's fees.

Horizon requested findings of fact and conclusions of law. Among other things, the trial court found that:

- other than Sucarichi's signature, the handwritten portions of the contract were filled in by Horizon's salesman;

- Horizon's salesman told Sucarichi that two lights were necessary due to the length of the pool;

- one light was installed in the pool and another one was installed in the spa;

- the diagram of the pool in Horizon's file showed that the pool and spa were "separate components" of the construction.

The trial court concluded that Horizon breached the contract by failing to install two lights in the pool. In sum, the trial court implicitly concluded that the contract was ambiguous and looked to extraneous proof of the parties' intent—the salesman's discussion with Sucarichi and the construction diagram—and found that the parties intended to install two lights in the pool and a third in the spa. It calculated

5

Sucarichi's damages by subtracting the amount he withheld from Horizon from the amount it would cost him to install a second light in the pool.[1]

## DISCUSSION

Horizon contends that the contract unambiguously required it to install one light in the pool and a second one in the spa; thus, it further contends, it did not breach the contract as a matter of law. Even if the contract is ambiguous, Horizon contends that the proof is legally insufficient to support the trial court's implicit finding that the parties agreed that the combined pool and spa would have three lights. Horizon does not challenge the judgment on any other grounds.

**I. The contract is ambiguous as to whether it required Horizon to install a total of two or three underwater lights in the combined pool and spa.**

**A. Standard of review and applicable law**

Whether a contract is ambiguous is a question of law, which we review de novo. *Charles R. Tips Family Tr. v. PB Commercial*, 459 S.W.3d 147, 153 (Tex. App.—Houston [1st Dist.] 2015, no pet.). When we review an issue de novo, we accord no deference to the trial court's decision. *Cooke v. Morrison*, 404 S.W.3d 100, 111 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

---

[1] The trial court's findings of fact and conclusions of law erroneously state that the court subtracted $3,700 from $7,823.30 to arrive at Sucarichi's damages of $3,963.20. Instead, the court subtracted $3,960.40—the amount that the Olmsteads testified Sucarichi still owed—from $7,923.60—the amount stated on the face of Sucarichi's estimate for installation of a second light.

The fact that the parties disagree about the meaning of a contract does not make it ambiguous. *Guggenheim Corp. Funding v. Valerus Compression Serv.*, 465 S.W.3d 673, 681 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). Nor is their testimony admissible on the issue of ambiguity. *Pitts & Collard, L.L.P. v. Schechter*, 369 S.W.3d 301, 313 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Instead, a court generally must decide whether a contract is ambiguous by determining the parties' intent as expressed within the four corners of the agreement. *See Guggenheim*, 465 S.W.3d at 681–82. Mere lack of clarity or poor draftsmanship does not make a contract ambiguous, unless its provisions are susceptible to more than one reasonable interpretation. *Id.* at 681.

We accord contract terms their plain, ordinary, and generally accepted meaning unless the contract defines them to the contrary or otherwise indicates a different meaning. *Hodges v. SAFECO Lloyds Ins.*, 438 S.W.3d 698, 700 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Concierge Nursing Ctrs. v. Antex Roofing*, 433 S.W.3d 37, 47 (Tex. App.—Houston [1st. Dist.] 2013, no pet.). We consider the contract in its entirety rather than reading its provisions in isolation. *Concierge Nursing*, 438 S.W.3d at 47. We may neither add to nor subtract from its language. *N. & W. Ins. v. Sentinel Inv. Grp.*, 419 S.W.3d 534, 538–39 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

If the contract is unambiguous, the court construes its meaning as a matter of law without reference to extrinsic evidence, excepting external references like dictionaries, which may be consulted regarding ordinary meaning. *Gen. Metal Fabricating Corp. v. Stergiou*, 438 S.W.3d 737, 754 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Mescalero Energy v. Underwriters Indem. Gen. Agency*, 56 S.W.3d 313, 320 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). In contrast, if the contract is ambiguous, its interpretation is a fact issue to be resolved by a factfinder, who may consider extraneous evidence of the parties' intent. *Mescalero*, 56 S.W.3d at 319; *Plotkin v. Joekel*, 304 S.W.3d 455, 470 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The ostensible rule of construction that ambiguities in a contract should be construed against its drafter plays no role "in making a fact finding about what the parties intended." *GTE Mobilnet of S. Tex. v. Telecell Cellular*, 955 S.W.2d 286, 291 (Tex. App.—Houston [1st Dist.] 1997, no writ).

## B. Analysis

Relying on *Entzminger v. Provident Life & Accident Insurance Co.*, 652 S.W.2d 533 (Tex. App.—Houston [1st Dist.] 1983, no writ), Horizon first asserts that Sucarichi waived the issue of ambiguity by failing to plead it. But *Entzminger* is no longer good law on this point. Based on intervening authority, we have held that a trial court charged with interpreting a contract may determine that it is ambiguous. *See Plotkin*, 304 S.W. at 475 n.10 (citing *White v. Moore*, 760 S.W.2d

242, 243 (Tex. 1988), and *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983)); *N. Cen. Oil v. La. Land & Expl.*, 22 S.W.3d 572, 575–76 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (same); *see also J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 231 (Tex. 2003). Regardless, both Sucarichi and Horizon introduced extrinsic evidence of the meaning of the contract at trial and both parties discussed extrinsic evidence in their closing arguments, thereby trying the issue by consent. *Sage Street Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 445 (Tex. 1993). Thus, we reject Horizon's contention that Sucarichi's failure to plead ambiguity precluded the trial court from concluding that the contract was ambiguous.

The parties' contract consisted of two pages, the second of which was a series of terms and conditions typewritten in capital letters. All of the specific terms pertaining to Sucarichi's spa and pool appear on the first page, which was a preprinted form with blanks. The relevant portion of the parties' contract was subdivided into four sections. The first two sections, which are set off from one another by line that spans half the length of the contract's text, concern the pool. These sections contain two different provisions relating to lights. The first states "Lights(s)" and is accompanied by the handwritten notation "(2) L.E.D." The second provision states "Pool Light" and is accompanied by an illegible handwritten

9

notation.[2]  The third section concerns the spa and the fourth section concerns decking, maintenance equipment, and landscaping.  The third and fourth sections are separated from one another and the two sections relating to the pool by lines that span the full length of the contract's text.  The third provision relating to lights occurs in the spa section, in which there is a blank for "Light" accompanied by the typewritten notation "100 watt."

We hold that these provisions are ambiguous with respect to the total number of lights Horizon was to install, inasmuch as one could reasonably construe the contract to provide for two lights in the pool and one in the spa or two lights total in the combined pool and spa.  The contract supplies no reason to favor one interpretation over the other.  Its terms do not explicitly state the total number of lights in a combined structure.  In addition, the two sections pertaining to the pool confuse the matter by providing two separate blanks relating to lighting: "Lights(s)" and "Pool Light."  The handwritten notation accompanying the latter of these is illegible, which ultimately renders it impossible to say what the contract specifies with respect to lighting.  *Cf. Guzman v. Acuna*, 653 S.W.2d 315, 319 (Tex. App.—San Antonio 1983, writ dism'd) (affirming ruling that illegibility of essential handwritten terms in form contract made it uncertain and ambiguous and thus

---

[2]     The trial court found that the handwritten notation "(2) L.E.D." appeared next to the blank for "Lights(s)."  But its findings of fact do not reference the illegible handwritten reference next to the blank for "Pool Light."

10

unenforceable by specific performance). Accordingly, we hold that the contract is ambiguous on this point. Thus, the trial court did not err in allowing extrinsic proof to ascertain the number of lights that the parties agreed would be installed in the pool. *See Plotkin*, 304 S.W.3d at 470; *Mescalero*, 56 S.W.3d at 320.

## II. The evidence is legally sufficient to support the trial court's finding that the parties agreed that the combined pool and spa would have three lights.

### A. Standard of review and applicable law

In an appeal from a bench trial, we accord the trial court's findings of fact the same weight as a jury's verdict. *Thompson v. Smith*, 483 S.W.3d 87, 93 (Tex. App.—Houston [1st Dist.] 2015, no pet.). When, as here, there is a complete reporter's record, challenged fact findings are not conclusive; they are binding only if legally and factually sufficient proof supports them. *Id.* However, unchallenged findings of fact do bind an appellate court unless the contrary is proven as a matter of law or there is no evidence to support the finding. *McAleer v. McAleer*, 394 S.W.3d 613, 620 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

To show that the evidence is legally insufficient, a party that did not bear the burden of proof at trial must establish that there is no evidence to support the contested finding. *Heritage Hous. Dev., Inc. v. Carr*, 199 S.W.3d 560, 565 (Tex. App.—Houston [1st Dist.] 2006, no pet.). We will sustain a legal insufficiency challenge if there is a total lack of proof or the proof is no more than a scintilla, rules of law or evidence bar us from giving weight to the only supporting proof, or the

11

proof conclusively establishes the opposite of the finding. *Id.* But the evidence also must be viewed in the light most favorable to the trial court's findings. *Id.* We disregard evidence and inferences contrary to a finding, unless the evidence only permits one inference. *Id.*; *Trammell v. Trammell*, 485 S.W.3d 571, 575 (Tex. App.—Houston [1st Dist.] 2016, no pet.). We defer to the trial court's assessment of the credibility of the witnesses. *Hung v. An*, 426 S.W.3d 786, 793 (Tex. App.—Houston [1st Dist.] 2012, no pet.). The ultimate question is whether the proof, viewed in that light, would permit a reasonable factfinder to render the challenged findings. *Heritage*, 199 S.W.3d at 565.

## B. Analysis

Horizon does not challenge any of the trial court's individual findings of fact, but it contends that the proof is legally insufficient to support the trial court's implicit finding that the parties agreed to the installation of three lights total, two in the pool and one in the spa.

The trial court found that Horizon's salesman filled out the contract, and Horizon does not challenge this finding. Sucarichi testified that the company's salesman did so. Sucarichi said that he understood the written contract to provide for two lights in the pool and one in the spa. The trial court found that Horizon's salesman told Sucarichi that two lights were necessary due to the length of the pool, and Horizon does not challenge this finding. Sucarichi testified that the company's

12

salesman persuaded him to install two lights in the pool. According to Sucarichi, the salesman explained that the pool was so long that one light would not be enough. In corroboration of this testimony, Sucarichi introduced into evidence a letter he subsequently wrote to the company in which he tried to persuade it to perform the contract as he understood it. In the letter, Sucarichi wrote that Horizon's salesman had told him at the time of contracting that he needed two lights in the pool due to its length given that Sucarichi wanted the pool's deep end illuminated. Without this light, Sucarichi testified, the bottom of the pool is not visible at night because the single pool light the company installed was in the shallow end. Furthermore, the trial court found that the construction diagram showed the pool and spa to be "separate components" of the construction, and Horizon does not challenge this finding on appeal. We defer to the trial court's resolution of the conflicting testimony on these matters. *See Hung*, 426 S.W.3d at 793. Taken together, this proof is legally sufficient to support the trial court's implicit finding that, based on extrinsic evidence of the parties' intent, they agreed to the installation of three lights total, two in the pool and one in the spa. *See Thompson,* 483 S.W.3d at 93. Accordingly, we hold that legally sufficient evidence supports the trial court's implicit finding that the parties agreed to the installation of three lights in the combined spa and pool.

## CONCLUSION

We hold that the trial court did not err in interpreting the contract to be ambiguous on the disputed question. We further hold that legally sufficient evidence supports its findings favoring the homeowner. We therefore affirm the judgment of the trial court.


Jane Bland
Justice

Panel consists of Justices Bland, Massengale, and Lloyd.